**GEORGE WASHINGTON UNIVERSITY MEDICAL CENTER, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, et al., Respondents.**

**No. 85–1658.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1987.
Decided Aug. 31, 1987.

Kenneth C. Bass, III, with whom Amy S. Berman, Washington, D.C., was on the brief, for petitioner.

J. Alan Galbraith, with whom Julie Gross Adelson, Washington, D.C., was on the brief, for respondent Georgetown University Hosp.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., entered an appearance, for the District of Columbia.

Before PRYOR, Chief Judge, and NEBEKER and ROGERS, Associate Judges.

NEBEKER, Associate Judge:

George Washington University Medical Center ("GW") has petitioned this court to review an order of the District of Columbia Board of Appeals and Review (the "Board"). In the challenged order, the Board dismissed as untimely GW's appeal of a final decision of the D.C. State Health Planning and Development Agency (the "State Health Agency") awarding a certificate of need ("certificate") to Georgetown University Hospital ("Georgetown") for the acquisition and operation of the medical device known as a nuclear magnetic resonance scanner ("NMR scanner"). The Board, the State Health Agency and Georgetown are designated as the respondents in this appeal.

GW first contends that its appeal of the State Health Agency's certificate of need award to Georgetown was in fact timely and, therefore, was erroneously dismissed by the Board. GW also maintains that it was improperly denied a "contested case" hearing before the State Health Agency in violation of the D.C. Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.* (1987). Respondent Georgetown counters that (1) this court lacks jurisdiction because GW's petition for review was not filed timely here, (2) the Board correctly dismissed GW's appeal as untimely, and (3) the "contested case" issue, for procedural reasons, is not properly before this court.

The Board and the State Health Agency (*i.e.*, the District of Columbia) adopt Georgetown's contentions and add that, on substantive grounds, GW was not entitled to a trial-like, contested case hearing before the State Health Agency under the Administrative Procedure Act. For the reasons set forth below, we decline to address the merits of the issues raised, and we dismiss the petition for review.

On December 7, 1984, the D.C. Department of Human Services, under which the State Health Agency functions, promulgated regulations which established "[s]pecial certificate of need procedures, considerations and criteria for review of nuclear magnetic resonance (NMR) scanners." 31 D.C.Reg. 6149–57 (1984) (22 DCMR §§ 4600–4610.1). This emergency rulemaking action, as it was called by the department, was authorized by D.C.Code § 32–304 (1981), a provision of the D.C. Certificate of Need Act, *id.* §§ 32–301 *et seq.* (1981 & Supp.1987). The Certificate of Need Act itself is designed "to promote effective and equitable health planning and regulation of new institutional health services and capital expenditures proposed for the District of Columbia." *Id.* § 32–301. *See District of Columbia Hospital Association v. Barry*, 498 A.2d 216, 217 (D.C. 1985). The certificate regulations pertaining to NMR scanners were implemented in furtherance of the act's purpose:

> Nuclear magnetic resonance (NMR) imaging is a new medical diagnostic modality which produces images based on the responses of atomic nuclei in the body after being subjected to a strong magnetic field. The D.C. State Health Planning and Development Agency ... has received letters of intent to apply for a Certificate of Need ... to acquire and install NMR scanners from seven D.C. hospitals. Because every D.C. hospital does not have the ability to provide NMR services, regulations are necessary to ensure reasonable access to such services by patients of D.C. hospitals which do not acquire NMR equipment. Further, because the full medical benefits of NMR have not yet been established, successful [certificate] applicants must be required

to conduct clinical research and collect and report data on NMR. In addition, due to the magnetic properties and surrounding fringe fields of NMR, it is imperative that any application be closely examined by the District of Columbia to ensure that a proposed installation affords maximum safety for hospital patients, visitors and staff. Finally, because current NMR acquisition and installation costs range from $2.5 million to $4 million, a rational, limited diffusion of NMR services for a defined period of time must be established by regulation. This is necessary to avoid the unplanned proliferation and inefficient use of expensive equipment which may become obsolete in a short time due to rapid technological developments, and the consequent burden on D.C. health care consumers and taxpayers.

31 D.C.Reg. at 6149.

These concerns were identified, for the most part, by a technical advisory panel which was convened by the State Health Agency "to examine issues regarding NMR imaging and the introduction of NMR scanners into the District of Columbia." *Id.* at 6150, 22 DCMR at § 4600.3. And based on the State Health Agency's findings, the Department of Human Services concluded that the introduction of NMR services in the District would occur through a demonstration period of not less than one year, and that certificate applications for a scanner would be considered by the State Health Agency in a "batched review" beginning in December 1984. *Id.* at 6151, 22 DCMR at § 4602.1. The department further concluded that no more than four NMR scanners would be approved by the State Health Agency. *Id.*, 22 DCMR at § 4602.2.

As it turns out, six hospitals located in the District, including petitioner GW and respondent Georgetown, filed certificate applications for a NMR scanner pursuant to the department regulations. The other four hospitals which applied are Washington Healthcare Corporation/Washington Hospital Center ("WHC"), Howard University Hospital ("Howard"), Providence Hos-

pital ("Providence") and Children's Hospital National Medical Center ("Children's Hospital"). On March 29, 1985, the State Health Agency rendered decisions on each of the competing certificate applications. Based on the six hospitals' written applications and the recommendations of an advisory body, the Statewide Health Coordinating Council, see D.C.Code §§ 32–304, –305 (1981), the State Health Agency awarded three certificates, one each to Georgetown, WHC, and Howard. It denied certificates to the other applicants, including GW. The State Health Agency's decision to award three certificates, rather than four as permitted by regulation, was in keeping with a recommendation made by the advisory council during the application review process.

On April 25, 1985, GW timely sought reconsideration from the State Health Agency of the denial of its own certificate application and the grant of certificates to Georgetown, WHC and Howard. See D.C. Code § 32–308 (1981). On May 20, the State Health Agency informed GW by letter that it had decided "to grant a reconsideration hearing in the case of [Certificate of Need] #83–2–2, George Washington University Medical Center." Providence and Children's Hospitals also were granted reconsideration of the adverse decisions rendered on their applications.

The reconsideration hearing was held on May 28, 1985, and involved the three unsuccessful applicants, as well as WHC. Neither Georgetown nor Howard participated in the hearing. On June 24, the State Health Agency affirmed its original decision denying GW a certificate for the NMR scanner. In a concluding paragraph of its decision, the State Health Agency stated that "[GW] has not demonstrated the need for a fourth [NMR] scanner in the District of Columbia. Moreover, [GW] has not proffered sufficient reasons warranting revocation of the [certificates of need] to [Howard], [Georgetown] and [WHC]." On the same day, the State Health Agency affirmed its decision against Providence Hospital and modified WHC's certificate to allow Children's Hospital a greater say with respect to WHC's NMR system.

On July 17, 1985, GW appealed the State Health Agency's reconsideration decision to the Board. See D.C.Code § 32–309 (1981). In its appeal, GW sought review not only of the denial of its own certificate application, but also review of the certificate grants to Georgetown, WHC and Howard. On August 26, Georgetown filed a motion with the Board to dismiss the GW appeal as untimely insofar as it challenged the certificate grant to Georgetown. Georgetown contended that GW was awarded a reconsideration hearing by the State Health Agency only with respect to its own application, not the Georgetown grant, and that the 30–day period of appeal to the Board ran from May 20, 1985, the date GW was notified of the State Health Agency's final action on the Georgetown certificate. Therefore, according to Georgetown, GW's July 17 appeal to the Board was several weeks late.

On September 10, 1985, the Board entered an order granting Georgetown's motion to dismiss the GW appeal insofar as it challenged the Georgetown certificate grant. GW maintains here, however, that it did not receive notice of the dismissal until November 5, 1985. On December 5, 1985, GW filed in this court the instant petition for review of the Board's September 10 order.

Therefore, we now have before us only one aspect of the Board's decision on the GW agency appeal, viz., the Board's dismissal of GW's challenge to the Georgetown certificate of need grant. GW informed us in its brief (which was filed in June 1986) that its appeal from the State Health Agency's denial of its own application for a certificate and the granting of certificates to Howard and WHC was then pending before the Board, and that a hearing on these aspects of the appeal was originally scheduled in August 1986. Presumably, GW sought and obtained a stay of those proceedings pending our decision in this appeal: GW stated in its brief that it intended to seek such a stay from the Board. GW also informed us, subsequent to the oral argument in this case, that the Board rendered a decision in the appeal of Prov-

idence Hospital affirming the State Health Agency's denial of the Providence certificate application. Our records reflect that Providence did not file in this court a petition for review of the adverse Board decision. And it appears that the third unsuccessful certificate applicant, Children's Hospital, did not appeal the State Health Agency's reconsideration decision in view of the agency's modification of the WHC grant in Children's Hospital's favor.

Without having considered on its merits the issue of the timeliness of GW's petition for review, we believe an argument can reasonably be made that D.C.Code § 32–310 (1981), as written, confers jurisdiction on this court to review the petition even though it challenges only one aspect of the Board's decision. Under § 32–309(b), *supra*, "[t]he decision of the Board of Appeals and Review shall be considered the final decision of the [State Health Agency]." Section 32–310 confers jurisdiction on this court to review "[t]he final decision upon an application for a certificate of need," and "[a]ny person adversely affected by a final decision of the [State Health Agency] may obtain such judicial review." Arguably, a final agency decision was rendered on Georgetown's certificate application: this aspect of GW's appeal was removed by the Board's September 10 order and the Board has since rejected Providence Hospital's appeal. And the argument would proceed that GW was adversely affected by the "final decision" because it was determined that Georgetown would receive one of only three available certificates.

■ On the other hand, since GW has presently pending the Board appeal of the State Health Agency's denial of its own certificate application and certificate grants to Howard and WHC, it can be argued that § 32–310 does not confer jurisdiction in this case because it has not been finally deter-

mined that GW was "adversely affected" by the certificate grant to Georgetown. That is, if GW's existing appeal to the Board is successful, with respect to the denial of its own application or the grants to Howard and WHC, GW might end up with either one of the two certificates now in the hands of Howard and WHC or the fourth certificate which the State Health Agency, by regulation, may yet award. This argument, which we find more persuasive, is supported also by the notion that GW has not fully exhausted its administrative remedies to obtain judicial review of, what is in essence, a final agency decision affirming the denial of its certificate application and the certificate grants to the other hospitals. *See* § 32–310, *supra.* *Cf. Siler v. District of Columbia Department of Employment Services*, 525 A.2d 620, 622 (D.C.1987).

■ Thus, in our view, this court lacks jurisdiction over the GW appeal at this time. But even if we were to conclude that under § 32–310 a final decision is now before us, of which GW has standing to challenge pursuant to the statute, we would dismiss the appeal for the alternative, albeit related reason that the appeal is not ripe for decision. Any decision in this case on the merits would be meaningless to GW if it ultimately obtains the certificate it desires as a result of the appeal pending before the Board.

Accordingly, this petition for review is dismissed.

*So ordered.*