In the Matter of the ESTATE OF Alex H. BURTON.

Appeal of Jean SANDERS.

No. 86–622.

District of Columbia Court of Appeals.

Submitted Oct. 7, 1987.

Decided April 29, 1988.

Marion E. Baurley, Washington, D.C., was on the brief for appellant.

Before BELSON, TERRY and ROGERS, Associate Judges.

ROGERS, Associate Judge:

In this appeal we must decide whether the probate judge erred in denying payment of the family allowance, D.C. Code § 19–101(a) (1981), out of the net proceeds of a sale of real property ordered by the court in order to pay the decedent's creditors. Appellant Jean Sanders, the surviving spouse of the decedent Alex H. Burton and personal representative of his estate, appeals the denial of payment of the full family allowance, arguing that the proceeds of a forced sale of realty are part of a decedent's personal estate and are available for the purpose of paying the family allowance. Because the District of Columbia Probate Reform Act of 1980 generally abolished the distinction between real and personal property, we agree and accordingly reverse.

I

When Alex Burton died on November 10, 1982, he owned his residence at 1521 Fort Davis Street, S.E., and approximately $2,160.00 in personal property. A petition for probate was filed, and his spouse, appellant Jean Sanders, was appointed personal representative of the estate. Ms. Sanders' search for assets disclosed that the decedent's personal property would be inadequate to meet the claims against the estate, which were in excess of $18,000. The judge sitting in the Probate Division, therefore, granted Ms. Sanders' request to sell the Fort Davis Street property in order to satisfy the outstanding claims against the estate. The property was sold for $41,000.00 on May 24, 1984, and Ms. Sanders was forced to move.

By letter of August 23, 1984, Ms. Sanders' attorney requested the Deputy Register of Wills to expedite the audit of the two accountings filed in the estate because Ms. Sanders had suffered a stroke and "desperately" needed the money to which she was entitled under the family allowance, D.C.Code § 19–101(a) (1981), to pay her medical and therapeutic expenses. Nine months later, Ms. Sanders filed a motion requesting the approval of the second and final accounting for the estate.

In the motion Ms. Sanders stated that her attorney had been advised that the final accounting "will not be forwarded to the Court or if forwarded will be denied because the bulk of the statutory family allowance was paid out of the proceeds remaining after the forced sale [of the Fort Davis Street property]." An accompanying memorandum stated that the auditor had called Ms. Sanders' attorney shortly before the medical bills had become due and directed that the bills be paid out of the family allowance. Ms. Sanders initially re-

jected this idea, but as the bills became due and she had not yet recovered from her last stroke, she decided, after her attorney had researched the law, to take the remainder of the family allowance out of the estate on an "as needed" basis over a six month period. Prior to filing the second and final accounting Ms. Sanders had withdrawn only

> minimal amounts toward the statutory family allowance, electing to take a lump sum payment at the time of approval of the final accounting in order to establish a family home. However, around the time the final accounting was filed, [Ms. Sanders] fell victim to two strokes. She required extended hospitalization, treatment and therapy. The bills resulting from these incidents were massive as the deceased never carried medical coverage for himself or his wife.

The memorandum further stated that following the last payment of the family allowance, Ms. Sanders' attorney was informed by a representative of the Probate Division of the D.C. Superior Court that Ms. Sanders would have to pay back the bulk of the family allowance to the estate because the proceeds from the court-ordered sale, after payment of the claims against the estate and the deceased's obligations, were to be treated as realty and not personalty, and hence should be disbursed in accordance with the law of intestate succession. Ms. Sanders protested that repayment would impose an extreme hardship on her, contrary to the purpose of the family allowance to protect the surviving spouse and children from destitution and homelessness as a result of a personal tragedy. She also contended that repayment was inequitable since she had lost her home in order to satisfy the claims of her husband's creditors, and that the position taken by the Probate Division was without legal support.

The Register of Wills advised the judge sitting in the Probate Division of an unpublished opinion holding that the proceeds of a sale of real estate could not be treated as personalty for purposes of paying the family allowance. *In re Estate of Conyers*, Admin. No. 742–81 (D.C.Super.Ct. Dec. 19,

1984) (Pratt, J.). By supplemental memorandum, Ms. Sanders argued that *Conyers* was factually distinguishable since the marital home in the instant case had not been sold to satisfy the family allowance. The probate judge denied the motion for approval of payment of the full family allowance out of the net proceeds of the forced sale of the Fort Davis Street property, relying on *Conyers*.

## II

D.C.Code § 19–101(a) (1981) provides:

> Upon the death of a person leaving a surviving spouse, the spouse is entitled to an allowance out of the *personal estate* of the decedent of the sum of $10,-000 for the personal use of himself [or herself] and of minor children. The allowance shall be paid in money, or in specific property at its fair value, as the surviving spouse may elect. It is exempt from all debts and obligations of the decedent, and is subject only to the payment of funeral expenses not exceeding $750. [Emphasis added.]

"The manifest intention of the provision was to supply the surviving spouse with some necessary money before there can be any distribution or payment out of the estate." *In re Estate of Jones*, 259 F.Supp. 951, 952 (D.D.C.1966) (construing substantially identical prior provision of D.C.Code § 19–101(a) (1961)). Ms. Sanders contends that the probate judge erred in refusing to approve payment of the full family allowance to her because the proceeds of a forced sale of real property to pay creditors should be treated differently for purposes of estate administration from the proceeds of an ordinary sale. We hold that the probate judge erred in failing to approve payment of the full family allowance from the net proceeds of the court-approved sale of the decedent's real property because the Probate Reform Act included a decedent's real property in the decedent's estate, thus making the proceeds of the sale subject to payment of the full family allowance.

In 1980 the Council of the District of Columbia enacted the District of Columbia

Probate Reform Act, a comprehensive revision of the District's probate law. D.C.Law 3-72, codified principally at D.C. Code §§ 20-101 *et seq.* (1981); COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, BILL No. 3-91, at 1-2 (Mar. 12, 1980) (hereinafter COMMITTEE REPORT). *See also Poe v. Noble,* 525 A.2d 190, 193 (D.C.1987). The Act amended Part III of the D.C.Code on Decedents' Estates and Fiduciary Relations, repealing substantially all of then-existing Title 20 (Probate and Administration of Decedents' Estates) and making conforming amendments to Titles 18 (Wills), 19 (Descent and Distribution), 21 (Fiduciary Relations and the Mentally Ill), and to provisions in Titles 40 (Motor Vehicles) and 47 (Taxation and Fiscal Affairs). The Act specifically provided, with three procedural exceptions, that "there shall be no preference or priority between real and personal property." D.C.Code § 20-106 (1981).[1] One of the conforming amendments revised D.C.Code § 19-301 (1973), striking subsection (b) of that section.[2] *See* D.C.Act 3-181, § 204(b), 27 D.C.Reg. 2155, 2205 (May 23, 1980); COMMITTEE REPORT, *supra,* at 5, 81-82. According to the Committee Report, the personal representative's authority to dispose of real property remained subject only to the three limitations set forth in D.C.Code §§ 20-343, 20-703 and 20-742. COMMITTEE REPORT, *supra,* at 9; see note 1, *supra.*

The legislative history reveals that the Council expressly intended to eliminate the traditional probate preference for preservation of the real property of the estate at the expense of the personal property. *See Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc) (court may properly resort to legislative history no matter how clear statute may appear upon superficial examination) (quoting *Harrison v. Northern Trust Co.,* 317 U.S. 476, 479, 63 S.Ct. 361, 362, 87 L.Ed. 407 (1943)). The Committee Report stated that the distinction between realty and personalty, which had originated in feudal England when land was the principal source of wealth, was no longer useful today. COMMITTEE REPORT, *supra,* at 5-6. For example, the Report suggested, the traditional preference for realty might require the sale of income-producing stocks before the sale of a vacant lot to pay estate debts. *Id.* at 6. The Report concluded that "the personal representative [should be afforded] much-needed flexibility for paying debts and expenses." *Id.* at 9; *see Poe v. Noble, supra,* 525 A.2d at 193 (payment of personal representative and counsel to the estate). Accordingly, under the legislation a personal representative would be permitted to dispose of real property without first exhausting all personal property. COMMITTEE REPORT, *supra,* at 9.

The probate judge denied Ms. Sanders' motion for payment of the family allow-

---

1. D.C.Code § 20-106 provides:
   Except as provided in sections 20-343 [publication and claims of creditors by foreign personal representative], 20-703 [interested person may move Court to have priority placed on sale of any property in estate, including real property], and 20-742 [personal representative may *petition for court order to act* in any manner relating to administration of the estate and must obtain a court order to invest in, sell, exchange, or lease real property], there shall be no preference or priority between real and personal property.

2. Prior to amendment, D.C.Code § 19-301 (1973) provided:
   **Course of descents generally**
   (a) The real estate in the District of Columbia, of a deceased person, male or female, if not devised, shall descend in fee simple, and the surplus of the personal estate of a deceased resident of the District, if not bequeathed,

shall be distributed, to the surviving spouse, children, and other persons in the manner provided by this chapter. The heirs specified by this subsection take the real estate as tenants in common in the same proportions as they take the surplus personal estate as provided by this chapter.
(b) Subject to the right of dower, the real estate specified by subsection (a) of this section is liable, when the personal estate is insufficient, for the payment of the intestate's funeral expenses, debts, costs of administration, and estate, inheritance, and succession taxes in the same manner and to the same extent as the personal estate of the intestate. When the real estate is sold under a decree of a court having jurisdiction over it, the consent of the surviving spouse to the sale is not required unless the surviving spouse elects to take dower.

ance out of the net proceeds of the sale of the Fort Davis property, relying on *Conyers, supra,* Admin. No. 742–81. In that case the widow sought to satisfy payment of her family allowance through the sale of the marital residence.[3] Judge Pratt, sitting as the judge in the Probate Division, denied the request, relying on the language of § 19–101(a), which requires the family allowance to be paid out of the "personal estate" of the decedent, and reasoning that since the proceeds from the sale of real estate remained realty, they were not part of the "personal estate" of the decedent and could not be used to pay the family allowance. Although acknowledging that the Probate Reform Act provided for a general elimination of the distinction between realty and personalty, the judge concluded that "the distinction between personalty and realty has not been completely eliminated. Title 20 [the Probate Reform Act] does not attempt to amend Title 19." The relevant statutory provisions and the legislative history demonstrate that this conclusion was incorrect.

Our primary obligation when we are called upon to interpret a statute is to "ascertain and give effect to the legislative intent and to give legislative words their natural meaning." *Rosenberg v. United States,* 297 A.2d 763, 765 (D.C.1972). Where the language of the statute has "superficial clarity", review of the legislative history may reveal ambiguities which the court must resolve, however, and "a court may refuse to adhere strictly to the plain wording of a statute in order 'to effectuate the legislative purpose.'" *Peoples Drug Stores, supra,* 470 A.2d at 754 (quoting *Mulky v. United States,* 451 A.2d 855, 857 (D.C.1982)). While the Probate

Reform Act retained the "personal estate" language of § 19–101(a), we conclude upon reading the Act as a whole, *Floyd E. Davis Mortgage Corp. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983) (court must construe a statute "in the context of the entire legislative scheme"), together with its legislative history, that the Council intended that the estate from which the family allowance could be paid was to include real property. *See* D.C.Act 3–181, § 204(b), 27 D.C.Reg. 2155, 2205 (May 23, 1980) (repealing D.C.Code § 19–301(b) (1973)); COMMITTEE REPORT, *supra,* at 81 ("[T]his legislation includes realty in probate estates...."). From the clear and repeated statements of legislative purpose it is apparent that the Council did not intend for the common law distinction between realty and personalty to pose an obstacle to payment of the family allowance through the sale of realty if the personal representative deemed the sale necessary. The Council clearly decided to give the personal representative greater flexibility in paying claims and certain expenses of the estate, specifically including authority for the personal representative to seek court permission to sell real property, D.C. Code § 20–742(b) (1981), which is precisely what occurred in the instant case. COMMITTEE REPORT, *supra,* at 6, 9. *See Poe v. Noble, supra,* 525 A.2d at 193 & n. 7.

Prior to the enactment of the Probate Reform Act, the District's probate law reflected the traditional distinction between realty and personalty in the payment of claims against the estate. The laws relating to intestate succession required that in meeting the estate's financial obligations the personal representative must exhaust

---

**3.** In *Conyers* the widow had left the marital home more than thirty years before the death of the decedent. During their separation, the decedent had entered into a relationship with another woman by whom he had two children. One of the children had been appointed the personal representative of his father's estate in 1981. No distribution of the estate to heirs and beneficiaries had occurred at the time of the widow's petition for an order directing the personal representative to sell the marital home immediately.

The widow's petition was not made within the six-month period required for the presentation of claims under § 20–903. The probate judge, then Judge Pratt, noted that the six-month requirement did not apply to the family allowance or the spouse's one-third statutory share under § 19–303. He denied the widow's petition, however, on the ground that the widow was entitled to payment of the family allowance only out of the personal estate of the decedent. She also was entitled to her one-third statutory share from the net estate, which would include the proceeds from the sale of real property.

the personalty before resort could be had to any real property owned by the estate. Thus, § 19–301(b), *supra* note 2, provided that the real estate of a decedent would become liable for the debts of the decedent's estate only if the personal estate should prove insufficient to pay the estate's obligations. In that event the real property could be sold and the proceeds from the sale distributed in the same manner as the personal estate of the intestate. Insofar as expenses were concerned, however, § 19–301(b) only authorized payment of funeral expenses. Payment of the family allowance, if not within the meaning of "debts or costs of administration" under subsection (b), was limited under subsection (b) to the personal property in the decedent's estate.

The Probate Reform Act made four amendments to Title 19 of the D.C. Code. The Act raised the family allowance from $2,500 to $10,000, raised the funeral expense allowance from $600 to $750, and substituted the term "children born out of wedlock" for "illegitimate children" in accordance with the D.C. Anti–Sex Discriminatory Language Act, D.C.Law No. 1–87. Most significantly for purposes of this appeal, the Act repealed § 19–301(b), which described the limited circumstances under which real property could be disposed of to pay certain expenses of the estate. With reference to that repeal, the Committee Report specifically explains that it "repeals a provision distinguishing between real and personal property and thus conforms current title 19 to other provisions of this legislation." COMMITTEE REPORT, *supra*, at 82.[4] Under the Probate Reform Act payment of the family allowance is second in priority only to the payment of funeral expenses. D.C.Code § 20–906.[5]

Given the Council's clearly expressed intent to allow the personal representative the authority to sell real property in order to pay creditors' claims against the estate, without first exhausting the personal estate, COMMITTEE REPORT, *supra*, at 5–6, 9, it would be anomalous to hold that the proceeds of a court-ordered sale of real property, which could properly be used to pay creditors' claims, could not also be used to satisfy the family allowance when the Council has accorded the family allowance a higher priority in the order of payment than the claims of creditors. D.C.Code § 20–906, *supra* note 5. The anomaly is particularly evident in the instant case. Ms. Sanders, as personal representative, obtained the court's permission to sell the marital home so that her husband's creditors could be paid. They were paid, and more than $10,000 remained from the proceeds of that sale. She had pressing and unexpected medical expenses which needed to be paid before final distribution of the estate. Surely denial of payment of the full family allowance to her from the proceeds of the sale of the marital home after the creditors have been paid would not be consistent with the Council's provision for court-approved sales of real property and for the priority of the family allowance in the order of payment.

---

**4.** The introduction in the Committee Report to the conforming amendments made by the Act states:

Title II [of the Act] raises the family allowance from $2,500 to $10,000. The family allowance is the portion of a decedent's estate paid to the surviving spouse and minor children before all other obligations except funeral expenses. The increase in the family allowance compensates for the effects of inflation. Because this legislation includes realty in probate estates for the first time, title II also exempts deeds of personal representatives from the Deed Recordation Act.

*Id.* at 81.

**5.** D.C.Code § 20–906 (1981) provides in pertinent part:

**Order of payment**
(a) If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:
(1) funeral expenses, not exceeding $750;
(2) family allowance, not exceeding $10,000;
(3) claims for rent in arrears for which an attachment might be levied by law;
(4) judgments and decrees of courts in the District of Columbia;
(5) all other just claims.
The priority schedule for the payment of claims is, insofar as is relevant here, the same as that set forth in § 19–101(a).

As the preceding discussion demonstrates, the underlying premise of the *Conyers* decision was flawed.[6] The Probate Reform Act did amend Title 19 of the Code and eliminated all distinctions between real and personal property except with respect to three specifically enumerated procedural requirements. The repeal of § 19–301(b) demonstrates the Council's intention to do away with the preference for preserving real property when paying estate expenses and to include real property within decedents' estates, thereby granting the personal representative greater flexibility in administering the estate. To avoid an unwise decision by a personal representative to sell valuable real property and needlessly deplete the assets of the estate, numerous protective provisions are contained in the Probate Reform Act.[7]

Accordingly, we interpret the Council's use of the "personal estate" language in § 19–101(a) as intended to be fully consistent with the abolition of the distinction between realty and personalty under the Probate Reform Act. Our interpretation is consistent not only with the legislative history of the Act, but with the overall statutory scheme. By abolishing the distinction between realty and personalty in all respects except for certain procedural requirements, see note 1, *supra*, the Probate Reform Act treats all property as part of a decedent's estate. Real property, if not subject to a court-approved sale, and in the absence of a will provision to the contrary, would be disbursed in accordance with the rules of intestate succession. *See* § 19–301. But if real property is subject to a court-approved sale, then the proceeds

from that sale become a part of the decedent's personal estate. The proceeds could hardly retain their character as realty subject to intestate succession, if used, for example, for the purpose of paying creditors, and this change in character was recognized for some purposes even in the predecessor statute. *See* § 19–301(b), *supra* note 2. Since the family allowance takes precedence over the payment of creditors, it necessarily follows under the legislative scheme created by the Probate Reform Act that the proceeds of a sale of real property are available for payment of the family allowance. Therefore, we hold that the probate judge erred in refusing to approve payment of the full family allowance to Ms. Sanders out of the net proceeds of the sale of the Fort Davis Street property. The judgment is therefore reversed.

---

6. Indeed, even under the rationale of *Conyers*, the widow's request there to sell the marital home in order to pay the family allowance is readily distinguishable from the personal representative's request in the instant case to sell the marital home in order to pay the decedent's creditors and thereafter to use the net proceeds to pay the family allowance.

7. *See, e.g.,* D.C.Code §§ 20–742(b) (personal representative must obtain an order of court authorizing any proposed sale of real property), 20–343(c) (requiring posting of bond by foreign personal representative before lease or transfer of real property), 20–703 (interested person may

request court-ordered preference for any property of the estate). *See also id.* §§ 20–722, –723 (mandatory requirement that the personal representative shall give notice to all interested persons of all distributions and expenditures), 20–701(a) (personal representative is a fiduciary), 20–704 (notice to be given to interested persons, creditors and unknown heirs of appointment of personal representative); 20–711 (personal representative must send a copy of the inventory of the estate assets to all interested persons), and 20–743 (liability of personal representative for breach of fiduciary duty and resulting damage or loss).