**COUNCIL OF SCHOOL OFFICERS, Appellant,**

v.

**M. David VAUGHN and Dr. William Rumsey, Chairman, Public Employee Relations Board, Appellees.**

No. 87–291.

District of Columbia Court of Appeals.

Argued June 6, 1988.
Decided Jan. 31, 1989.

Johnnie Landon, of the Bar of North Dakota, admitted pro hac vice, with whom Lillian A. McEwen and Steven E. Murray were on the brief, Washington, D.C., for appellant.

Kathleen A. McKee, Washington, D.C., for appellee M. David Vaughn.

Christopher A. Hart, Washington, D.C., for appellee Dr. William Rumsey.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., filed a statement as amicus curiae.

Before ROGERS,[*] Chief Judge, and FERREN and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellant Council of School Officers (CSO) appeals from the dismissal of its petition for review of an interest arbitration award. The trial court held that the award was not subject to judicial review where the District of Columbia's Comprehensive Merit Personnel Act (CMPA), D.C. Code § 1-601.1 et seq. (1987 Repl. & 1988 Supp.), provided that such an award was final and binding on the parties. Id. § 1-618.17(f)(3). The court also rejected CSO's alternative contention that the award was subject to common law judicial review on the ground that CSO had not alleged that the decision on which the award was based was arbitrary, indefinite,

or beyond the scope of the arbitration panel's authority. CSO appeals contending that the award is reviewable either as agency action under the District of Columbia Administrative Procedure Act, D.C. Code § -1-1501 et seq. (1981), or under common law. We do not reach these issues because CSO failed to sue an indispensable party, Super.Ct.Civ.R. 19(a), and the D.C. Council had not yet approved the award pursuant to § 1-618.17(j) at the time that CSO filed its petition for review. Accordingly, we reverse and remand the case to the trial court to dismiss the complaint for want of jurisdiction because the award was not final and effective.

## I.

Appellant Council of School Officers (CSO), an independent labor organization, is the exclusive bargaining representative for approximately 535 public school officers in the District's public school system.[1] CSO and the District of Columbia Board of Education were parties to a collective bargaining agreement that was due to expire on April 6, 1985. Under the provisions of the District of Columbia Comprehensive Merit Personnel Act (CMPA), the terms of that agreement remained effective while the parties undertook collective bargaining in an attempt to reach a new agreement. D.C.Code § 1-618.17(f)(4) (1988 Supp.). After efforts by the parties and by mediators proved to be unsuccessful in resolving the parties' differences,[2] CSO requested, pur-

---

[*] Judith W. Rogers was an *Associate Judge* at the time of argument. Her status changed to *Chief Judge* on November 1, 1988.

1. In its response filed August 5, 1988, to a rule to show cause issued by this court on June 9, 1988, why the appeal should not be dismissed for failure to join the District of Columbia as an indispensable party, the District of Columbia, as amicus curiae, advised that, as the result of a new union representative election, CSO no longer represents the public school officers. Appellee Rumsey has similarly advised the court on September 22, 1988. We need not reach this issue in view of our disposition.

2. The record indicates that the parties conducted virtually no bargaining until late September 1985, just prior to the end of the District's 1985 fiscal year. On September 16, 1985, CSO filed a

notice of impasse with the District of Columbia Public Employee Relations Board (PERB) regarding compensation issues. *See* D.C.Code § 1-618.17(f)(3). Subsequently, the Board of Education also filed a notice of impasse with PERB. After meeting on September 28, 1985, the parties reached a tentative agreement, which was later rejected by CSO's membership. CSO then gave notice of a new impasse on September 30, 1985.

After receiving notice of the impasse, PERB's Executive Director asked the Federal Mediation and Conciliation Service to provide a mediator to assist in the resolution of the dispute. *Id.* § 1-618.17(f)(3). See note 3, *infra*. There followed two sessions with the federal mediator at which the parties did not discuss the issues face to face. There was disagreement about whether the respective positions of the parties were com-

suant to § 1–618.17(f)(3),[3] binding arbitration on compensation matters.[4] Thereafter, on January 8, 1986, PERB appointed appellee Vaughn as impartial arbitrator and permitted both CSO and the Board of Education to select one arbitrator each. Following eight days of hearings, commencing on January 21, 1986, the arbitration panel issued its opinion and award on February 14, 1986. Appellee Vaughn and George Margolies, the panel member selected by the Board of Education, subscribed to the award, while Johnnie Landon, CSO's advocate arbitrator, dissented from the panel's opinion and award.[5] Vaughn then resigned his position as impartial chairman and the panel was dissolved.

Dissatisfied with the award, CSO sought review of the arbitration panel's decision by PERB. PERB ruled that it had no power to review interest arbitration awards.[6] On March 17, 1986, CSO filed a petition in the Superior Court to set aside the panel's award, naming as respondents appellee Vaughn and appellee Dr. William Rumsey, chairman of PERB. The trial court granted appellees' motions to dismiss the petition on February 24, 1987, ruling that the CMPA precluded judicial review and that CSO's petition did not state a sufficient basis for common law judicial review. The trial court also rejected CSO's argument that the arbitration panel's award was a final order of PERB and therefore reviewable under § 1–618.13(c).[7]

## II.

The meaning of the phrase "final and binding" in § 1–618.17(f)(3), see note 3, *supra,* is the principal dispute raised by the parties to this appeal. The issue, in essence, is whether that phrase is properly interpreted as precluding all judicial review of interest arbitration awards, and if not, what is the proper scope of judicial review. A threshold issue, however, causes us to

municated and understood, and the mediator eventually recessed negotiations, declaring that any further attempts to resolve the dispute would be futile.

3. D.C.Code § 1–618.17(f)(3) provides:

If the parties reach an impasse on any issues in negotiations before the declared automatic impasse date, any party shall promptly notify the Executive Director of the Public Employee Relations Board in writing. The Executive Director shall assist in the resolution of this impasse by selecting an impartial person experienced in public sector disputes to serve as a mediator. If the mediator does not resolve the impasse within 30 days, or any shorter period designated by the mediator, or before the automatic impasse date, the Executive Director, upon the request of any party, shall appoint an impartial Board of Arbitration to investigate the labor-management issues involved in the dispute, conduct whatever hearing it deems necessary and issue a written award to the parties with the object of achieving a prompt and fair settlement of the dispute. The last best offer of each party shall be the basis for this impasse arbitration. The award shall contain findings of fact and a statement of reasons. The award shall be *final and binding* upon the parties to the dispute.
*Id.* (emphasis added.)

4. When the parties were unable to agree whether both compensation and noncompensation issues should be submitted to arbitration at once, CSO sought a temporary restraining order to compel the appointment of an arbitrator to resolve compensation issues. On January 3, 1986, the Executive Director of PERB entered into a consent order with CSO agreeing to appoint an arbitrator. Neither the action for the temporary restraining order nor the consent order is at issue in this appeal.

5. Johnnie Landon is also counsel in the instant appeal.

6. "Interest arbitration"

refers to the arbitration of disputes arising from negotiations for *new* contract terms. In contrast, "grievance" disputes arise from the interpretation or application of an *existing* agreement. "Binding" interest arbitration is arbitration that results in a legally binding contract award.

Grodin, *Political Aspects of Public Sector Interest Arbitration,* 64 Calif.L.Rev. 678, 678 n. 1 (1976) (emphasis added). *See Winston–Salem Printing Pressmen and Assistants' Union No. 318 v. Piedmont Publishing Co.,* 393 F.2d 221, 224 n. 3 (4th Cir.1968). This form of arbitration is also referred to as "prospective" or "quasi-legislative" or "new contract" arbitration. *Id.* at 223–24; *see also NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252,* 543 F.2d 1161, 1163 n. 4 (5th Cir.1976); Note, *Quasi–Legislative Arbitration Agreements,* 64 Colum.L.Rev. 109, 110–11 (1964).

7. D.C.Code § 1–618.13(c) provides for appeals from PERB orders by any person aggrieved thereby.

forego resolving the issue of judicial review at this time.

It is an elementary proposition of law that a plaintiff must sue the proper party or parties as defendant. *Flack v. Laster,* 417 A.2d 393, 399–400 (D.C.1980) (citations omitted). Rule 19(a) of the Superior Court rules of civil procedure provides:

> (a) *Persons to be joined if feasible.* A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the Court shall order that he be made a party.

Who is a proper party defendant, or respondent, in an appeal from an interest arbitration award is a question of first impression in this court and turns on the statutory scheme created for impasse arbitration in the CMPA.[8]

### A.

■ The CMPA was enacted to create a modern, flexible, and comprehensive system of public personnel administration in the District of Columbia government. HOUSE COMM. ON THE DISTRICT OF COLUMBIA, 96TH CONG., 1ST SESS., REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA ON THE DISTRICT OF COLUMBIA GOVERNMENT COMPREHENSIVE MERIT PERSONNEL ACT OF 1978 at 153 (Comm.Print 1979). The statute sought to foster "a positive policy of labor-management relations including collective bargaining between the District of Columbia government and its employees...." D.C.Code § 1–601.2(a)(6). The CMPA established PERB and invested that body with a number of functions, among which is the resolution of bargaining impasses through final and binding arbitration. *Id.* §§ 1–605.1, –605.2(4), –618.2(c). Under the statute, PERB may not itself perform arbitration and is limited to the selection of arbitrators from a list consisting of persons agreed upon by labor and management. *Id.* § 1–605.2(4). PERB is empowered only to consider appeals from arbitration awards rendered pursuant to a grievance procedure, *id.* § 1–605.2(6), and its decisions are subject to review in the Superior Court. *Id.* § 1–605.2(12).

The CMPA sets forth a specific procedure for compensation bargaining, based on negotiations between government employers and the unit representatives of government employees for the purpose of producing agreements on matters such as salary, wages, health benefits, and hours. *Id.* § 1–618.17(b). Prior to the expiration of an existing collective bargaining agreement, management must begin a thorough study of the compensation being paid to comparable groups of government employees in the Washington, D.C. area. *Id.* § 1–618.17(c). Not later than ninety days before the expiration of any existing collective bargaining agreement, the results of the study are to be made public and available to the parties to the negotiations. *Id.* § 1–618.17(e)(1). Negotiations between the parties to an existing collective bargaining agreement must begin no later than ninety days prior to the expiration of that agreement. *Id.* § 1–618.17(f)(1). Section 1–618.17(f) provides for resolution of bargaining impasses through the use of mediation and binding interest arbitration. Arbitration may be invoked at any stage of the negotiations by either party in the event the impasse cannot be resolved through mediation, *id.* § 1–618.17(f)(1), (2), (3), and the decision of the arbitration panel "shall be

**8.** *See In re Estate of Burton,* 541 A.2d 599 (D.C. 1988) (statutory construction); *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751 (D.C.1983) (same); *Floyd E. Davis Mortgage Corp. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983) (construe statute in the context of the entire legislative scheme).

final and binding on the parties to the dispute." *Id.* § 1–618.17(f)(3), *supra* note 3.

■ Furthermore, once the arbitration panel issues its decision and award, the D.C. Council can accept or reject the award. *Id.* § 1–618.17(j). If the Council disapproves the award, then further collective bargaining is to occur; otherwise the award goes into effect. *Id.* See note 12, *infra.* The Mayor is required to support the arbitration panel award, and the District government is required to include the award in its budget requests to the Congress. *Id.* §§ 1–618.17(i) & (k).

### B.

Appellees' motions to dismiss CSO's petition for review contended in relevant part that they were not the proper respondents. Vaughn pointed to his limited role, having nothing to do with implementation or enforcement of the award, and maintained further that he was immune from suit. PERB pointed out that there was no final order by it from which CSO could appeal and that the CMPA expressly restricted PERB's role in interest arbitration to selection of the arbitration panel. PERB also raised a procedural objection, contending that CSO had failed to comply with PERB's Rule 1 because CSO had failed properly to serve the District government as required by Rules 4 & 5. CSO responded that it had served the Corporation Counsel with a copy of its original complaint.[9] Neither appellee, however, cast its dismissal argument in terms of the absence of an indispensable party nor referred to Super.Ct.Civ.R. 19(a), and the trial court made no reference to Rule 19(a) in its opinion.

■ As noted, the provisions for collective bargaining through impasse arbitration are designed to obtain a decision for parties who are otherwise unable to agree. By express language of the CMPA, the award is final and binding on the parties. See note 3, *supra.* Consequently, for CSO

to obtain relief from an interest arbitration award, the CMPA requires that it first look to the D.C. Council to disapprove the award, and thereby obtain the right to new collective bargaining. If, however, the award goes into effect, then CSO either will be without a further remedy or will have to sue the District government, now bound to implement the award, in which event the issues relating to subject matter jurisdiction would arise.

This interpretation of the statutory scheme is in accordance with the specified procedure for compensation bargaining and the differentiation between grievance and interest arbitration. It also is consistent with the concept of a limited delegation of legislative authority by the D.C. Council over the determination of compensation levels.[10] Furthermore, it offers an avenue of relief to a disappointed party through the mechanism of D.C. Council disapproval of the award, and, in the event that proves unsuccessful and this court holds that judicial review is not completely precluded, the prospect of meaningful judicial relief.

■ As CSO has framed its current lawsuit, neither Vaughn nor Rumsey, the chairman of PERB, can afford the relief sought. Vaughn, the neutral arbitrator, cannot act alone and neither the neutral arbitrator nor the arbitration panel is made a suable entity under the statute. Rumsey cannot prevent, much less nullify, the Council's approval of an interest arbitration award or the District government's payment of compensation in accordance with the award. Nor is a final order of PERB involved since PERB has not adopted the arbitration award as its own and has no such role under the statute. Hence, since there is "no demonstration that [their presence] in th[e] litigation is necessary to enable the court to afford all of the requested relief," *Equal Employment Opportunity Comm'n v. Levi Strauss & Co.,* 515 F.Supp. 640, 642 (N.D.

---

9. Although (apparently) served, the District government made no effort to enter the case.

10. In view of our disposition, we do not reach the question of whether this delegation is impermissible, as CSO contends.

Ill.1981), Vaughn and Rumsey should be dismissed as defendants.[11]

■ In addition, at the time CSO filed its lawsuit, the Superior Court was without jurisdiction to determine whether interest arbitration awards rendered pursuant to D.C.Code § 1–618.17 were subject to judicial review. CSO filed its petition for review of the award on March 17, 1986. However, the award was not final and effective because the D.C. Council had not reviewed the award for either approval or rejection pursuant to § 1–618.17(j). *Cf. District of Columbia v. Eck,* 476 A.2d 687, 689 (D.C.1984) (an order of a Superior Court commissioner is not final where the trial judge has not approved or rejected it as contemplated by statute). Indeed, the award was not even final and effective at the time the court issued its judgment on February 24, 1987. The D.C. Council did not approve the award until March 3, 1987.[12]

■ It is well-established that this court will only review final judgments and orders, whether from the trial court, *Hagner Management Corp. v. Lawson,* 534 A.2d

343, 344 (D.C.1987); *Crown Oil and Wax Co. v. Safeco Ins. Co. of America,* 429 A.2d 1376, 1379 (D.C.1981); *Whitman v. Noel,* 53 A.2d 280, 281 (D.C.Mun.1947); D.C.Code § 11–721(a)(1), or an administrative agency. *George Washington Univ. Medical Center v. District of Columbia Bd. of Appeals and Review,* 530 A.2d 227, 230 (D.C.1987); *Office of People's Counsel v. Public Serv. Comm'n,* 477 A.2d 1079, 1082 (D.C.1984); *Auger v. District of Columbia Bd. of Appeals and Review,* 477 A.2d 196, 213 (D.C.1984). The lack of finality removes the issue from the subject matter jurisdiction of this court. *Jenkins v. United States,* 548 A.2d 102, 109 (D.C. 1988); *Southland Indus., Inc. v. FCC,* 69 App.D.C. 82, 99 F.2d 117 (1938). Similarly, we hold that the Superior Court could only have had jurisdiction if CSO had filed its petition for review after the D.C. Council had in fact acted upon the award as required by statute. *Cf. Richardson v. District of Columbia Redev. Land Agency,* 453 A.2d 118, 124–25 (D.C.1982) (issue not fit for judicial review in Superior Court in absence of final agency action).[13]

---

11. *See also Greenhouse v. Greco,* 617 F.2d 408, 413–14 (5th Cir.1980) (Catholic bishop and other diocesan individuals should be dismissed as defendants in class action for desegregation of parochial schools since they would be unable to effectuate relief where schools controlled by individual churches); *Gary Energy Corp. v. Department of Energy,* 89 F.R.D. 675, 676–77 (D.Colo.1981) (individual agency officers should be dismissed as defendants where relief does not depend on their presence); *cf. Chancery Clerk v. Wallace,* 646 F.2d 151, 160 (5th Cir. 1981) (chancery judges and clerks had to be dismissed as defendants from class action challenging mental commitment procedures since they did not have necessary personal stake in outcome of controversy to assure case or controversy); *Mendez v. Heller,* 530 F.2d 457 (2d Cir.1976) (state judges and clerks lack requisite interest to be joined as defendants in suit challenging state residency requirement for divorce); *System Fed'n No. 30 v. Braidwood,* 284 F.Supp. 607, 610–11 (N.D.Ill.1968) (role of arbitrator analogous to that of trial judge in appellate proceedings); *Fong v. American Airlines, Inc.,* 431 F.Supp. 1340, 1343–44 (N.D.Cal.1977).

12. D.C. Council Resolution 7–22, Compensation Award for Employees of the District of Columbia Board of Education in Compensation Units 6 and 17 Approval Resolution of 1987, 34 D.C. Reg. 1737 (March 13, 1987). Prior to March 25,

1987, § 1–618.17(j) did not provide a time period within which management must transmit the settlement to the Council. The Council amended the CMPA to require management to transmit the arbitration award to the Council within sixty days. *See* D.C. Act 7–11, District of Columbia Government Comprehensive Merit Personnel Act of 1978 Collective Bargaining Amendment Emergency Act of 1987, 34 D.C.Reg. 2326 (April 10, 1987); D.C. Act 7–16, District of Columbia Government Comprehensive Merit Personnel Act of 1978 Collective Bargaining Amendment Temporary Amendment Act of 1987, 34 D.C.Reg. 2637 (April 24, 1987); D.C. Act 7–30, District of Columbia Government Comprehensive Merit Personnel Act of 1978 Collective Bargaining Amendment Act of 1987, 34 D.C.Reg. 3799 (June 12, 1987).

After management transmits the award the Council can accept or reject the award by resolution within sixty days or allow the award to become effective without formal action by allowing the sixty-day period to run. D.C.Code § 1–618.17(j).

13. One of the principle rationales of the finality requirement is to avoid resolution of issues on review which may become moot once the original decision-making process contemplated by statute is completed. *George Washington Univ. Medical Center, supra,* 530 A.2d at 230; *Richard-*

The effect of lack of jurisdiction in the trial court is to deprive this court of jurisdiction of the appeal. *1425 F. Street Corp. v. Jardin,* 53 A.2d 278, 279–80 (D.C. Mun.1947); *Wallace v. Degree,* 38 App.D.C. 145, 148–49 (1912). Accordingly, we remand the case to the trial court with instructions to vacate its judgment as void and to dismiss the complaint for want of jurisdiction. *District of Columbia Employees' Compensation Appeals Bd. v. Henry,* 516 A.2d 941, 944 (D.C.1986); *McCray v. McGee,* 504 A.2d 1128, 1131 (D.C.1986); *In re An Inquiry into Allegations of Misconduct Against Juveniles Detained at Cedar Knoll Inst.,* 430 A.2d 1087, 1093 (D.C.1981); *Hubbell v. United States,* 289 A.2d 879, 881 (D.C.1972); *1425 F Street Corp., supra,* 53 A.2d at 280.[14]

REVERSED AND REMANDED.

SCHWELB, Associate Judge (concurring in part and dissenting in part):

I concur in the majority's holding that we should not reach the merits, for CSO failed to join an indispensable party, namely, the District of Columbia. Indeed, the District, as the party responsible for paying the salaries of CSO's members, is the only potential defendant against whom CSO could obtain the relief it seeks. I also join my colleagues in holding that Vaughn and Rumsey are not appropriate parties defendant, that CSO can gain nothing from their presence in the litigation, and that the complaint should forthwith be dismissed against each of them.[1]

I am, however, unable to agree that this court should rule, *sua sponte,* without giving the original parties and the District an opportunity to be heard on the issue, and

without the trial judge ever having ruled on it, that CSO's suit was premature and must be dismissed because the District Council had not approved the arbitration award at the time the petition for review was filed. The conclusion that dismissal is necessary may well be correct, but it is not, in my view, so obviously right that the normal procedure of hearing from the parties and awaiting a decision on the issue by the trial judge ought to be by-passed.

I

As a general rule, an appellate court will not consider a legal issue or theory unless it was presented to the trial court. *D.D. v. M.T.,* 550 A.2d 37, 48 (D.C.1988); *see also Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360–61 (11th Cir.1984) (expounding rule and the exceptions thereto). This is particularly true where the issue was raised by the court rather than by the parties, for an appeal should not ordinarily be jettisoned to consider a question which was not considered by the parties or the court at the trial level or briefed or argued on appeal. *United States v. Klubock,* 832 F.2d 664, 665 (1st Cir.1987) *(en banc ).*

If an appellate court perceives a potential defect in its subject matter jurisdiction, however, it is obligated to raise the issue *sua sponte. Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 453 n. 1 (11th Cir.1984); *Dean Witter Reynolds, supra,* 741 F.2d at 361. Where it is necessary to consider an issue not decided below or raised on appeal, the usual practice is to request the filing of additional briefs on that issue.[2] *See D.D. v. M.T., supra,* 550 A.2d 37, 40. The reasons for this practice are readily apparent; the right to be heard is fundamental to our system of justice, and it is simply unfair to

---

son, *supra,* 453 A.2d at 124; *Crown Oil, supra,* 429 A.2d at 1379. At the time CSO filed its petition for review neither it nor the Superior Court could determine whether the D.C. Council would approve or reject the award. If the D.C. Council rejected the award and ordered further negotiations, then CSO would have obtained the relief it was seeking from the Superior Court.

**14.** Upon remand, the trial court also should address Vaughn's and Rumsey's requests for attorneys' fees.

**1.** I agree that the trial court should in the first instance address Vaughn's request for an award of counsel fees.

**2.** I note that when the parties failed to address in their briefs what appeared to us to be a potentially dispositive question, namely, whether CSO has failed to join the District as an indispensable party defendant, we issued an order to show cause and gave them and the District the opportunity to address the issue.

foreclose a party's claim on grounds which that party never had an opportunity to address. Unless the proper resolution of a question not argued or decided in the trial court is "beyond any doubt," injustice is more likely to be caused than avoided if an appellate court decides that question without the parties having been heard on it. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

For the reasons discussed below, it cannot in my view be fairly said that the majority's resolution of the jurisdictional question here decided is "beyond any doubt."

## II

At the time CSO initiated this case in the Superior Court, the arbitrators had completed their work. None of the cases relied on by the majority at pp. 11–14 of its opinion deals with the reviewability of an arbitration award where there is nothing further for the arbitrators to do, but where formal approval by a legislative body has not been obtained. In the absence of any directly controlling case law in the District or elsewhere, the issue appears to me to be an open one.

Although not directly on point, there is authority suggesting that the present suit may not be premature. In *Emporium Area Joint School Auth. v. Anundson Constr. & Bldg. Supply Co.,* 402 Pa. 81, 166 A.2d 269 (1960), the court held that a statute requiring that a motion to vacate an arbitration award be instituted within three months after the filing of the award begins to run with the delivery of the decision to the parties, even though no motion to confirm the award has been filed. In reversing the trial court's holding to the contrary, the court said:

> Under the view of the court below, an award could be vacated any time within three months after a motion for confirmation was made. Thus, if a motion to confirm were not made for a year, the court would be obligated to entertain a motion to vacate made fifteen months subsequent to the rendition of the award, and, if a timely motion to confirm were not made, the court evidently would be required to consider a motion to vacate made at any time. This result cannot be sanctioned. Arbitration should be a *quick* and easy mode of obtaining justice.

*Id.* at 84–85, 166 A.2d at 270 (emphasis in original). The court added that an unconfirmed award may be a bar to a subsequent action, and is "clearly not a nullity." *Id.* at 85 n. 1, 166 A.2d at 270 n. 1.

*Emporium* and the present case are obviously not on all fours. They are, however, similar in the significant respect that the award in each case was contingent on an event that had not yet occurred. If CSO had deferred filing its petition for review until the Council acted, more than a year after the award was made, this would have occasioned the very kind of delay which the court condemned in *Emporium*. Moreover, CSO might have confronted a defense of laches. *See, generally,* ANNOTATION, *Time for Impeaching Arbitration Award,* 85 A.L.R.2d 779 (1962 and Supp.1988); *Cf. Tokura Constr. Co. v. Corporacion Raymond, S.A.,* 533 F.Supp. 1274, 1277–78 (S.D.Tex.1982) (where contractor's objections to arbitration award were made five months after its issuance, statutory three-month limitation applied even though objections come soon after adverse party moved to confirm award).

It is true that, if the Council had disapproved the award, the issues in CSO's lawsuit would have become moot. If the court had set aside the award, on the other hand, this would have obviated the need for Council action. Perhaps we would decide, after full briefing of the question, that the Council's review must precede the court's, and that CSO was obliged to wait for a year for the Council to act and would not have imperiled its right to seek vacation of the award by doing so.[3] I submit, however, that this is not evident "beyond any

---

**3.** I note that the exact problem that arises in this case cannot recur. Under a recent amendment to the statute, an award of this kind becomes final unless the Council rejects it by a two-thirds vote of its members within sixty calendar days of its submission. *See* D.C.Code § 1–618.17(j) (1988 Repl.).

doubt." *Singleton, supra,* 428 U.S. at 121, 96 S.Ct. at 2877.

### III

Our resolution of an important jurisdictional issue without the participation of counsel or the trial court is even more troubling in light of the sequence of events in this case. The purported jurisdictional defect which is said to require that the case be dismissed and that the parties start all over again was remedied in March of 1987. If we must dismiss the case because the Council's approval came almost two years ago instead of almost three—and it may well be that we would do so even after hearing from the parties and the trial judge —then we must surely acknowledge that this unfortunate result entails an enormous waste of time and effort for the litigants, counsel and both courts. A new suit would have to be filed. A new filing fee would have to be paid. Service would have to be obtained again. A decision on the merits would be many months and many thousands of dollars further away in some distant hereafter.

Assuming that the majority view is correct, then these baleful consequences are compelled by the internal dynamics of the law and its perceived requirement of theoretical purity. An order to the parties to begin all over again seems to me to have little to do with justice or practicality. In general, I think courts should pause and perhaps take a deep breath before concluding that a particular ruling is required by law when neither party has requested it and when such a ruling does not promote, but rather impedes, the just, speedy and inexpensive resolution of the controversy.

There is no gainsaying that the sequence of events in this case was unusual. The arbitration panel issued its award on February 14, 1986. CSO filed its petition for review on March 17, 1986. The trial judge ruled on February 24, 1987. The Council approved the award a week later, on March 3, 1987. If approval by the Council was a jurisdictional prerequisite for the trial court's review, then that court had finished with the case before it had the authority to consider it at all.

But all of this is history now. The parties and the trial court paid no attention to the inaction on the part of the Council, and did nothing differently because of it. If the Council had acted on March 3, 1986 instead of March 3, 1987, everything else in the case would be exactly the same, except that what the majority views as the controlling jurisdictional issue would not arise. A rose is a rose is a rose, and jurisdiction is jurisdiction, but I wonder if the law is so rigid, and so preoccupied with pristine conceptual theory at the expense of practical considerations, that several years of litigation have to be thrown in the ash heap because of a "defect" which made no difference whatever to anybody, and which was corrected long ago. Accordingly, I think the question is fairly raised whether, even assuming, *arguendo,* that the trial court was without jurisdiction when it entertained the case, such lack of jurisdiction can be treated as having been remedied, *nunc pro tunc,* when the Council approved the award.

I do not deny that application of the *nunc pro tunc* principle may present difficulties. In general, as the Supreme Court held in one of its most famous (or infamous) decisions, lack of subject matter jurisdiction cannot be waived. *Dred Scott v. Sandford,* 60 U.S. (19 How.) 393, 402, 15 L.Ed. 691 (1857); [4] *see also Lang v. Windsor Mount Joy Mut. Ins. Co.,* 487 F.Supp. 1303, 1306 (E.D.Pa.) aff'd, 636 F.2d 1209 (3d Cir.1980) and authorities there cited. Where federal jurisdiction is predicated upon diversity of citizenship, for example, and no such diversity existed when suit was filed, a party's change of citizenship subsequent to filing will not remedy the initial defect. *Lyons v. Weltmer,* 174 F.2d 473 (4th Cir.1949); *Lang, supra,* 487 F.Supp. at 1306.

---

**4.** The infamy of the *Dred Scott* decision, which proclaimed among other things that the black man had no rights which the white man was bound to respect, *id.* 60 U.S. at 407, does not extend to its recognition of the basic principle of jurisdiction for which I cite it here.

Moreover, at least as a general proposition, an order *nunc pro tunc* must speak the truth. *Inland Irving Nat'l Bank v. American Flange & Mfg. Co.*, 75 F.2d 533, 535 (7th Cir.1935). Such an order may not serve to record a fact as existing on a prior date when the fact did not truly exist at that time. *Daine v. Commissioner*, 168 F.2d 449, 451 (2d Cir.1948). As the court succinctly put it in *In re Marriage of Warren*, 31 Or.App. 213, 219, 570 P.2d 104, 107 (1977) (quoting from *Roeser v. Roeser*, 116 Or. 108, 112, 239 P. 541, 542 (1925), "nothing can be entered *nunc* unless it actually happened *tunc.*")

There is, however, respectable authority for the proposition that a court may act *nunc* without prior action *tunc* to avoid injustice. "[One] function of a *nunc pro tunc* order is to compensate for judicial delay[5] in entering an order where the suitors have done all in their power to place the cause in a condition to be decided by the court." *Taylor v. Miller*, 162 W.Va. 265, 271–272, 249 S.E.2d 191, 195 (1978). *See also Atanasio v. Silverman*, 1 N.J. 245, 249–251, 62 A.2d 809, 811 (1949). Indeed, in *Tuten v. United States*, 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983), the Supreme Court held, notwithstanding a provision of 18 U.S.C. § 5021(b) (since repealed) that a conviction under the former Federal Youth Corrections Act could be set aside only if an order has been entered to that effect prior to the expiration of probation, a defendant may nevertheless move for such relief *nunc pro tunc* following the completion of his probationary period. *Id.* at 668, 103 S.Ct. at 1417. *Tuten* appears to apply *nunc pro tunc* doctrine to cure a jurisdictional defect.

I do not suggest that any of these decisions is directly in point. Nor, for that matter, are the cases cited by the majority.[6] I submit only that there is enough here for the parties to argue about to make it inadvisable for this court to decide the question without the conventional input from the parties and the trial court.

## IV

All of the members of the panel agree that, even if there were subject matter jurisdiction, the case would have to go back to the trial court so that CSO may have the opportunity to join an indispensable party.[7] Under these circumstances, I do not suggest that we contribute to more delay by making a second request for further briefs from the parties in this court. I would simply remand the case with directions to consider the jurisdictional issue raised by the Council's belated approval of the arbitration award, as well as the other questions which now confront the trial court (*e.g.* whether CSO still represents the public school officers, and whether CSO's counsel's representation has survived events which have occurred since the appeal was filed). If the case were ultimately dismissed because of the timing of the Council's approval of the award, then, under the procedure I suggest, everyone would at least have had his or her day in court on the dispositive issue. Accordingly, I respectfully dissent from the direction to the trial court to dismiss the suit without first hearing from the parties,[8] but concur in the remainder of Chief Judge Rogers' opinion for the court.

---

5. Or, in this case, delay by the Council.

6. In general, these cases hold that where agency action is non-final, or some other jurisdictional defect precludes trial court review, review by this court is also precluded. I agree fully with these principles.

7. The District of Columbia takes the position, and I think all members of the court agree, that dismissal is not appropriate here since the District can be joined on remand.

8. I am also constrained to observe that, if the majority is correct in ordering the dismissal of the case, without further submission by the parties, on the grounds that the trial court lacked jurisdiction, then the remainder of the opinion is pure dictum and arguably advisory in nature. In my view, this reinforces my position that we should decide the appeal on the basis of an issue that has been argued rather than on grounds which the parties have never addressed.