# District of Columbia
# Court of Appeals



FILED

JUL **28** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

No. **14-CV-1479**

FRATERNAL ORDER OF POLICE/
    METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE,
                                Appellant,

    v.                                     **CAB-3455-14**

DISTRICT OF COLUMBIA,
                                Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: THOMPSON and EASTERLY, *Associate Judges*; and FARRELL, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the decision of the Superior Court dismissing appellant's suit is affirmed

For the Court:

*[signature]*

JULIO A. CASTILLO
Clerk of the Court

Dated: July 28, 2016.

Opinion by Senior Judge Michael W. Farrell.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-1479

FILED 7/28/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

FRATERNAL ORDER OF POLICE/METROPOLITAN
POLICE DEPARTMENT LABOR COMMITTEE, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAB-3455-14)

(Hon. Stuart G. Nash, Trial Judge)

(Argued June 16, 2016                    Decided July 28, 2016)

*Gregory K. McGillivary*, with whom *Diana J. Nobile* was on the brief, for appellant.

*Holly M. Johnson*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and FARRELL, *Senior Judge*.

FARRELL, *Senior Judge*:  The Fraternal Order of Police/Metropolitan Police

Department Labor Committee (the FOP) appeals from the Superior Court's

dismissal of its suit asking for reversal of an impasse arbitration award made under

D.C. Code § 1-617.17 (f)(3) (2012 Repl.). Key to the issue we decide is that, in order to "take effect," D.C. Code § 1-617.17 (j), the arbitration award had to be submitted to the Council of the District of Columbia for its "accept[ance] or reject[ion]." *Id.* The Council approved the award by resolution in May of 2014, and the FOP brought this action challenging the Council's decision and the award. The District of Columbia as appellee contends that dismissal of the suit was required because § 1-617.17 bars judicial review of the Council's decision to accept or reject an arbitration award of this kind, one arising from "[c]ollective bargaining concerning [District employee] compensation." D.C. Code § 1.617.17 (Title). For the reasons that follow, we agree and affirm the judgment of the Superior Court.

## I.

### Statutory Overview

The District's Comprehensive Merit Personnel Act (CMPA), D.C. Code §§ 1-601.01 *et seq.*, creates "separate processes for the [negotiation and] adoption of compensation and non-compensation components of collective bargaining agreements" concerning District government employees. *District of Columbia v.*

*American Fed'n of Gov't Emps., Local 1403*, 19 A.3d 764, 765 n.1 (D.C. 2011). For non-compensation matters, an agreement is subject to the Mayor's approval. D.C. Code § 1-617.15 (a). If disapproved by the Mayor as "contrary to law," the agreement must be "returned to the parties for renegotiation of the offensive provisions or such provisions shall be deleted from the agreement." *Id.* Once an agreement takes effect, the Mayor must "submit [it] to the Council for its information." D.C. Code § 1-617.15 (b).

A different process governs agreement provisions concerning "salary, wages, health benefits, within-grade increases, . . . and any other compensation matters." D.C. Code § 1-617.17 (b). Because compensation and related matters affect budget decisions by the Council, "[c]ollective bargaining for a given fiscal year or years shall take place at such times as to be reasonably assured that negotiations shall be completed prior to submission of a budget [to the Council] for said year(s) . . . ." D.C. Code § 1-617.17 (f)(1). If negotiations reach an impasse, the parties must inform the District of Columbia Public Employee Relations Board (PERB), which must then appoint a mediator, who has thirty days to help the parties resolve the outstanding issues. D.C. Code § 1-617.17 (f)(2)-(3).

If mediation does not produce a settlement, PERB, at the request of either party, must appoint an impartial Board of Arbitration to investigate the matter in

dispute and hold any necessary hearing. *Id.* "The last best offer of each party shall be the basis for [this] . . . impasse arbitration," and the arbitrator must issue a written award "with the object of achieving a prompt and fair settlement of the dispute." *Id.* Although only compensation matters must be decided in this manner, an arbitrator may also consider non-compensation matters at the request of both parties or PERB. D.C. Code § 1-617.17 (f)(3A). The Council is entitled to "the same prior notice of negotiation proceedings" as the parties, and, for the purpose of "informing [Council] members . . . of the progress of negotiations," "the Council may appoint observers from its membership and staff." D.C. Code § 1-617.17 (h).

Of special importance here, the Mayor must "transmit all settlements, including arbitration awards, to the Council," together "with a budget request act, a supplemental budget request act, a budget amendment act, or a reprogramming, as appropriate," to ensure that the agreement or arbitration award is "fully fund[ed] . . . for the fiscal year to which it applies." D.C. Code § 1-617.17 (i)(1). An arbitration award will "take effect" thirty calendar days (not counting Council recess days) after the Mayor and Council enact budget legislation "that contains the funded settlement," unless "the Council [meanwhile] accepts or rejects the settlement, including an arbitrator's award, by resolution." D.C. Code § 1-617.17

(j). If the Council rejects a settlement or arbitration award, "then the settlement shall be returned to the parties for renegotiation, with specific reasons for the rejection appended to the document disclosing the rejection of the settlement." *Id.*

## II.

### Factual Background

Since 1980, the FOP and the District government have negotiated a series of collective bargaining agreements establishing the wages and terms and conditions of employment for the FOP's member police officers. Five years after their last agreement expired in 2008, the parties reached an impasse on a new agreement and, pursuant to D.C. Code § 1-617.17, submitted their dispute to an arbitration board. Among other things, the FOP proposed a contract that included wholly retroactive wage increases from 2009 through 2014, whereas the District's contract offer was mostly prospective, providing wage adjustments each year for fiscal years 2013 through 2017. At the conclusion of the arbitration hearing, the FOP argued that the District had failed to submit a separate "last best offer" regarding a

duration clause for the contract;[1] in the FOP's view, this required the arbitrator to accept the FOP's duration proposal of a contract ending in 2014.

The arbitrator rejected this argument as elevating "form" over "substance," because it was clear from the District's submission that "its wage proposal include[d] a contract through September 30, 2017" — hence contained a duration clause in any but a "hyper-technical" sense. The arbitrator ultimately adopted the District's last best offer on wages and related matters, finding that the District's proposal of a largely prospective wage increase through September 2017 "achieves a prompt and fair resolution of the dispute and is more consistent with statutory standards than the FOP's proposal."

The arbitration award was submitted to the Council as required. Following a public hearing on the matter, the Council rejected the FOP's position that the District had violated the last best offer requirement of § 1-617.17 (f)(2)-(3). The Council's resolution approving the award explained:

\* \* \*

---

[1] In accordance with § 1-617.17 (f)(3A), the parties had agreed to submit non-compensation matters, including duration of the contract, to the arbitration board.

(e) The Council finds that the decision of the arbitrator in this matter is reasonable and agrees with it. The Council agrees with the arbitrator that it is clear from the Executive's last best offer that its wage proposal includes a contract [including a duration provision] through September 30, 2017. To conclude otherwise would serve to elevate a hyper-technical argument above the interest of police officers to receive a new compensation agreement.[2]

D.C. Council, Res. 20-481, § 2 (e), 61 D.C. Reg. 4894 (May 6, 2014).

The FOP then filed this suit in Superior Court to "void" the Council's resolution, asking the court to "declare that the arbitration award violated the CMPA by imposing a duration clause that was not proposed by the Mayor as a last best offer." The trial judge granted the District's motion to dismiss the suit. In

---

2 The Council added:

(f) The Council is especially concerned that the FOP's compensation proposal might encourage mass retirements because it provides entirely retroactive compensation; officers nearing retirement would receive a 19% - 20.46% compounded salary increase – reflected in retirement benefits, without any requirement to earn additional service. On the other hand, the arbitrator's award better promotes public safety because it better avoids mass retirements by encouraging officers at or near retirement to work the additional years covered by the new agreement in order to obtain increased retirement benefits.

relevant part, he found "dismissal of this action . . . appropriate on [the] jurisdictional ground" that "the statute does not explicitly provide for judicial review of an award [approved by the Council] under" D.C. Code § 1-617.17, and contains no "standard of review to be applied by a reviewing court" in assessing the Council's approval. Altogether, this was "evidence that the CMPA does not contemplate *any* judicial review of an arbitration award approved by the D.C. Council . . ." (emphasis in original).

## III.

## Discussion

This court reviews *de novo* a dismissal for lack of subject matter jurisdiction. *See Family Fed'n for World Peace v. Moon*, 129 A.3d 234, 248 (D.C. 2015). The question presented of whether the Council's decision to accept or reject an arbitration award under D.C. Code § 1-617.17 is subject to judicial review is one of first impression. In *Council of Sch. Officers v. Vaughn*, 553 A.2d 1222 (D.C. 1989), the court held that a party could not seek judicial review of a compensation arbitration award *before* the Council decided whether to accept or reject it, *id.* at 1226, but left open the question presented here. *See id.* ("[F]or CSO to obtain

relief from an . . . arbitration award, the CMPA requires that it first look to the D.C. Council to disapprove the award . . . . If, however, the award goes into effect, then CSO either will be without a further remedy or will have to sue the District government . . . , in which event the issues relating to subject matter jurisdiction would arise."); *see also District of Columbia v. Fraternal Order of Police, Metropolitan Police-Labor Committee*, 691 A.2d 115, 117 n.1 (D.C. 1997). We decide that issue now.[3]

"The CMPA was intended to replace [the District's preexisting personnel] system with a 'uniform' and 'comprehensive merit personnel system.'" *Coleman, supra* note 3, 80 A.3d at 1031 (citation omitted); *see* D.C. Code § 1-601.02 (a). The CMPA therefore "provides the exclusive remedy for many (though not all) grievances suffered by District government employees, and . . . the courts lack subject matter jurisdiction to award relief where the CMPA's remedies are

---

[3] We do so even though the District conceded in the trial court that judicial review of the Council's approval was likely available, although "severely circumscribed." It has, of course, now withdrawn the concession. In any case, "[t]his court has consistently understood the question whether claims are foreclosed by the CMPA to go to the subject-matter of the Superior Court," and will consider such a claim "even if the District did not raise that specific question in the Superior Court." *Coleman v. District of Columbia*, 80 A.3d 1028, 1030 n.2 (D.C. 2013); *see also American Fed'n of Gov't Emps., Local 1403, supra*, 19 A.3d at 771. "Parties cannot waive subject matter jurisdiction by their conduct . . . ." *Chase v. Public Defender Serv.*, 956 A.2d 67, 75 (D.C. 2008).

exclusive." *Washington Teachers' Union, Local 6 v. District of Columbia Pub. Schs.*, 77 A.3d 441, 447 (D.C. 2013).

D.C. Code § 1-617.17 does not, by its terms, provide for judicial review of the Council's decision to accept or reject an arbitration award entered pursuant to that section. But neither does it expressly preclude it, and the FOP contends that this silence cannot displace the "'strong presumption' [that] exists in favor of judicial reviewability" of the actions of public bodies and officials. *Martin v. District of Columbia Courts*, 753 A.2d 987, 991 (D.C. 2000) (quoting *District of Columbia v. Sierra Club*, 670 A.2d 354, 358 (D.C. 1996)). The District counters that the presumption of judicial reviewability arose historically and has been applied only in the context of government administrative action, and that, for any but constitutional challenges (none is made here), it would pose a grave danger of "aggrandizement of one branch [of government] at the expense of the other," *Mistretta v. United States*, 488 U.S. 361, 382 (1989), if understood to allow court review of the lawfulness of action by a legislature.

The FOP has not cited, nor has our own limited survey of the vast literature on the subject found, an instance where the presumption of reviewability has been

found to apply to legislative action.[4]  But whatever the answer to that broad question, it does not take the FOP far, because any presumption of reviewability of the Council's approval of an arbitration award, "'like all presumptions used in interpreting statutes, may be overcome by . . . specific language or specific legislative history that is a reliable indicator of [legislative] intent[]' . . . to preclude judicial review." *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 673 (1986) (quoting *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984)).  "Whether and to what extent a particular statute precludes judicial review," the Court explained in the leading *Block* decision, "is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the . . . action involved." 467 U.S. at 345.  The presumption, in other words, "may be overcome by inferences of intent drawn from the statutory scheme as a whole," or when legislative "intent to preclude judicial review is fairly discernible in the statutory scheme." *Id.* at 349,

---

[4]  The FOP appears to argue by analogy to *Martin v. District of Columbia Courts, supra*.  But there the court applied the principle that "an *agency* is bound to follow its own regulations" (emphasis added), in holding that "the procedural limitations in the [D.C. Courts' Comprehensive Personnel Policies] on the power of the D.C. Courts to take adverse [personnel] actions are enforceable through judicial review if necessary." *Martin*, 753 A.2d at 994.  As relevant to the issue we decide, the actions of a court system acting in its administrative capacity do not compare to the legislative actions of the D.C. Council.

351 (internal citation and quotation marks omitted).[5]

Examination of D.C. Code § 1-617.17, its language and structure and the statutory "objectives" it embodies, *Block, supra*, leads inescapably to the conclusion that in enacting it the drafters meant to foreclose further review of the Council's decision to accept or reject a compensation arbitration award.[6] First, as the District points out, § 1-617.17's silence on judicial review is in stark contrast to the detailed procedural requirements it contains for every other step of compensation collective bargaining.[7] In *Block*, which construed the Agricultural

---

[5] "In the context of preclusion analysis," it follows, "the 'clear and convincing evidence' standard is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block*, 467 U.S. at 351.

[6] The exception, as always, must be for claims of unconstitutional action by, or endorsed by, the Council. As pointed out, no such claim is made here.

[7] Thus, quoting the District (and at the risk of repetition):

> Section 1-617.17 (f) establishes when negotiation must commence; when and under what circumstances an impasse may be declared; when and for how long the parties must mediate the dispute; when the dispute must be submitted to an arbitrator; and on what bases the arbitrator can rule. Sections 1-617.17 (i) and (j) establish when the Mayor must submit the award to the Council; what type of budget legislation must accompany the submission . . .; how much time the Council can take to approve or disapprove the award

(continued…)

Marketing Agreement Act of 1937, the Supreme Court noted the absence there of "an express provision" for judicial review initiated by the plaintiff class, and concluded: "In a complex [statutory] scheme of this type, the omission of such a provision is sufficient reason to believe that Congress intended to foreclose" such review. *Id.* at 347. Likewise, D.C. Code § 1-617.17's detailed specification of the steps leading to an arbitration award "tak[ing] effect," § 1-617.17 (j), is "structur[al]" evidence, *Block*, 467 U.S. at 345, that the Council in drafting the CMPA intended those steps to complete the approval process without further review.

But there is considerably more. Missing also from § 1-617.17's commitment to the Council of the decision to "accept[] or reject[]" an arbitration award are standards either for the Council to apply in making its decision or for courts to apply on supposed judicial review. Indeed, while the Council at least must recite "reasons" for rejecting an award, § 1-617.17 (j), a resolution of approval, as here, requires no such explanation. "[E]ven when [the legislature] has not affirmatively precluded judicial oversight," the High Court has stated, "review

_____
(…continued)

        by resolution; and when the award must take effect.

(Brief for the District of Columbia at 18). We need only add mention of the opportunity given the Council to monitor negotiations before any settlement or arbitration award is submitted for its approval. D.C. Code § 1-617.17 (h).

is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the . . . exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *see also Sierra Club*, 670 A.2d at 358 (unreviewability of action committed to agency discretion exists "where statutes are drawn in such broad terms that in a given case there is no law to apply"). In *Carlin v. McKean*, 823 F.2d 620 (D.C. Cir. 1987), the Circuit Court ruled that the United States Postal Service Board of Governors' decision to remove the Postmaster General was not reviewable because the statute granted the Board "full power" to appoint and remove the Postmaster, stated that his "term of service shall be fixed by the Governors," and attached "[n]o qualifications whatever . . . to their exercise of these powers." *Id.* at 623. No qualifications appear on the face of D.C. Code § 1-617.17 limiting the Council's judgment to accept or reject an arbitration award.

The FOP attempts to avoid these obstacles by contending that it "is not challenging the legality of the Council's ratification of the [arbitration award], but rather, the impasse award itself" (Reply Brief for the FOP at 3). This remarkable position, if accepted, would call for judicial review as though the arbitration award had never been submitted to the Council: it would treat Council ratification as at best a required exhaustion of remedies by the aggrieved party, without bearing on

the court's eventual authority to review the award. Simple respect for the dignity of a coequal branch of government is enough for us to reject this effort to reduce Council ratification to a "tryout on the road" for the "main event" of judicial review. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

We also must consider the "objectives . . . [and] legislative history" of D.C. Code § 1-617.17, *Block*, 467 U.S. at 345, in asking whether it contemplates judicial review of Council approval or rejection of an arbitration award. Throughout its life, D.C. Code § 1-617.17 has required that collective bargaining over compensation, leading to settlements or arbitration awards, be carried out contemporaneously with the appropriations process for that fiscal year.[8] But in 1991-92, the Council found that this had not been taking place reliably, because settlements and awards were being presented to the Council, and risked taking effect, "[w]ithout an accompanying budget." D.C. Council, Report on Bill 9-662 ("Committee Report") at 4 (December 1, 1992). Specifically, since the statute then made an arbitration award effective if the Council did not reject it within sixty days, "millions of dollars in [awarded] pay raises c[ould] be spent for months before the Council [wa]s able to see and act on the Mayor's plan for funding the

---

[8] *See* D.C. Code § 1-617.17 (f)(1) ("Collective bargaining for a given fiscal year . . . shall take place at such times as to be reasonably assured that negotiations shall be completed prior to submission of a budget for said year . . . .").

pay raises . . . ." *Id.* The Council therefore amended § 1-617.17 in 1992 to prevent awards, and corresponding raises, from "g[oing] into effect" before the Council could "enact the necessary financing tools." *Id.* As explained earlier, an award transmitted to the Council now must be accompanied by a budget request act (or proposed reprogramming) that "fully fund[s]" the award "for the fiscal year to which it applies," § 1-617.17 (i)(1); and the award will take effect only thirty days "after the Mayor and the Council enact the budget request act" (or approve reprogramming) "that contains the funded settlement," unless the Council meanwhile has "accept[ed] or reject[ed]" the award by resolution. D.C. Code § 1-617.17 (j). These twin "opportunities [the Council has] to accept or reject a pay raise — the budget act and the compensation resolution," Committee Report, *supra*, at 7-8, eliminate the problem of "the compensation and budget review processes [being] 'out of sync' with each other and with fiscal events in general." *Id.* at 6.

The FOP's proposed judicial review of the Council's approval or rejection of an arbitration award would produce a cleavage as dramatic as the one the Council closed in 1992 between the exercise of its appropriations authority and the "tak[ing] effect," § 1-617.17 (j), of an arbitration award. Months or even years of delay could result from trial court (and eventual appellate court) review before an

award was finally upheld or ruled invalid, and the Council meanwhile would have enacted a budget "contain[ing] the funded settlement." *Id.* The result, if the award were reversed, might well have been a payout of funds impossible or impractical to recoup — funds the Council (had it known its action was "unlawful") could have used to meet other budget priorities. And even if court review ended in sustaining the Council's approval, the lengthy uncertainty surrounding the appropriations process in the meantime would have been the very kind the Council intended to eliminate by the 1992 revisions.

This foreseeable thwarting of the statutory objectives may be the strongest reason for rejecting judicial review of the Council's action under D.C. Code § 1-617.17. In *Morris v. Gressette*, 432 U.S. 491 (1977), the Supreme Court held that the Attorney General's failure to approve a new voting requirement was unreviewable under the Voting Rights Act, explaining that the legislative history, while silent on reviewability, "indicate[d] a desire to provide a speedy alternative method of compliance to covered States," *id.* at 503, and "[s]ince judicial review of the Attorney General's actions would unavoidably extend this period, it is necessarily precluded." *Id.* at 504-05; *cf. Block*, 467 U.S. at 348 ("Allowing consumers to sue the Secretary [to challenge his milk-market orders] would severely disrupt [the statute's] complex and delicate administrative scheme."); *S. Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 457 (1979) ("The

disruptive practical consequences of [reviewability] confirm our view that Congress intended no such result."). Here too, the potential for disruption of a statutory scheme requiring budget action and ratification of arbitration awards to proceed in tandem impels us to reject the argument for judicial review.

For all of these reasons, we hold that a "settlement, including an arbitrator's award, . . . take[s] effect" under D.C. Code § 1-617.17 (j) in the manner the statute provides, and that the CMPA bars judicial review of the Council's approval or rejection of a compensation arbitration award. The decision of the Superior Court dismissing the FOP's suit is, therefore,

*Affirmed.*