**Reginald MARTIN, Appellant,**

v.

**DISTRICT OF COLUMBIA COURTS, Appellee.**

**No. 98–CV–1415.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1999.
Decided May 11, 2000.

---

Robert E. Cappell, Mitchellville, MD, for appellant.

James C. McKay, Jr., Assistant Corporation Counsel, D.C., with whom John M. Ferren, Corporation Counsel, D.C., and Charles L. Reischel, Deputy Assistant Corporation Counsel, D.C., were on the brief, for appellee.

Before RUIZ, GLICKMAN and WASHINGTON, Associate Judges.

GLICKMAN, Associate Judge:

Appellant Reginald Martin petitioned the Superior Court to review the termination of his employment by the District of Columbia Courts ("D.C.Courts"). Martin alleged that his termination was unlawful and in violation of the D.C. Courts' Comprehensive Personnel Policies ("CPP") governing adverse actions against court employees.[1] The trial court dismissed Martin's petition for lack of subject matter jurisdiction. We reverse. We hold that the Superior Court has jurisdiction to review adverse actions against nonjudicial court employees who have exhausted their administrative remedies and who allege that the proceedings against them did not comply with the requirements of the CPP.

## I. Factual and Procedural Background[2]

Appellant Martin was an accounting technician with supervisory responsibilities in the Finance Revenue Branch of the Financial Operations Division of the D.C. Courts. The Finance Revenue Branch operates cashier windows located in various divisions of the Superior Court and collects and safeguards fees, fines and other payments. Martin worked as a cashier at a window in the vicinity of the Landlord and Tenant (L & T) clerk's office.

During the fall of 1995, the Financial Operations Division developed a reorganization plan for the Finance Revenue Branch. The reorganization was to be overseen by Deputy Fiscal Officer John Andrews. On October 4, 1995, Andrews met with Martin in the public corridor outside the L & T clerk's office to explain the reorganization and the anticipated changes in Martin's duties. As their conversation progressed, Martin became agitated and expressed vociferously his opposition to the plan. When Andrews continued to reason with him, Martin responded with a threat of violence: "Get out of my face before you are hurt. We can take this outside." Martin then strode away toward the cashiers' room. Not wanting Martin, in his agitated state, to be in the cashiers room where money was kept out in the open, Andrews ordered Martin not to go there and instead

---

1. Portions of the CPP relevant to this case were revised on June 5, 1997, after the events giving rise to this appeal occurred. The changes do not affect our decision, but we do take note of some of the alterations where they are significant.

2. The facts as presented here track the hearing officer's findings of fact pursuant to Martin's June 3, 1996, hearing. "Under long-settled principles of appellate review, we must defer to an administrative agency's findings of fact and affirm them if they are supported by substantial evidence in the record as a whole." *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 53 (D.C.1992) (citing *Citizens Ass'n of Georgetown v. District of Columbia Zoning Comm'n*, 402 A.2d 36, 41–42 (D.C.1979)); *see also* D.C.Code § 1–1510(a)(3)(E) (1999). There is nothing in the record to suggest, nor does appellant claim for purposes of this appeal, that the findings of fact were not based on substantial evidence.

to go home for the day. Martin defied this order, entered the cashiers room and sat down at his desk.

Andrews and Charles Cooper, who was Martin's immediate Branch supervisor, summoned security guards and the Deputy Executive Officer of the D.C. Courts, William Rogers. By the time they arrived, Martin was belligerent and uttering loud profanities. He eventually surrendered his identification badge and keys and was escorted out of the building. Martin was placed on administrative leave with pay until he was terminated on March 7, 1996, for insubordination and making threats to fellow employees.

Martin appealed his termination pursuant to the procedures set forth in the CPP. A hearing was held on June 3, 1996, and the hearing officer issued written findings of fact and conclusions of law on July 3, 1996. She found that Martin had physically threatened Andrews and committed insubordination by entering and remaining in the cashiers' room. In addition, the hearing officer found that these actions "were not isolated or unique incidents but the continuance of a pattern of behavior of some longevity." Based on the seriousness of Martin's conduct, heightened by

his supervisory role with the attendant effects on employee morale and the integrity of court operations, the hearing officer found that termination was an appropriate sanction.[3] The Executive Officer of the D.C. Courts, Ulysses B. Hammond, accepted the hearing officer's recommendation on July 12, 1996.

Martin requested that the Joint Committee on Judicial Administration ("Joint Committee") review the decision to terminate him. The Joint Committee did not grant this request. Martin then filed a petition for review in the Superior Court on September 24, 1997. Martin sought reinstatement solely on the ground that the Executive Officer was disqualified under CPP Nos. 1011 and 1012 from making the final decision to remove him, because, Martin alleged, the Executive Officer was a complaining witness against him.[4]

The D.C. Courts, represented by the Corporation Counsel, moved to dismiss Martin's petition for lack of subject matter jurisdiction to review a decision of the Executive Officer made in accordance with the CPP. The trial court granted the motion, holding that under the CPP, court personnel are not entitled to judicial review of adverse employment decisions.[5]

**3.** CPP No. 1001(h-i) (1986) provided that "insubordination, including failure to follow oral or written directives ... [and] verbally abusing ... any individual on Court property or in relation to official duty" warrant adverse action. Such misconduct continues to call for corrective action, potentially including removal of the employee, under current CPP Nos. 1001, 1002 (1997).

**4.** In 1996, CPP No. 1011 required the Executive Officer to render a final decision in an adverse action proceeding. This requirement is now set forth in CPP No. 1007(10). Former CPP No. 1012 provided that "[w]here the Executive Officer is a complaining witness or the supervisor of an employee who is subject to these provisions, the appropriate Chief Judge shall be substituted as the individual who shall perform the acts of the Executive Officer required by this policy." This provision has been rewritten and renumbered in the current CPP, which now provides that "[w]here the Executive Officer is the official

initiating the corrective action, the appropriate Chief Judge shall substitute as the individual who shall perform the acts of the Executive Officer required by this policy." CPP No. 1007(11).

**5.** Martin moved to alter or amend the judgment of dismissal and to amend his petition with a complaint for damages resulting from wrongful termination. The D.C. Courts opposed this motion on the ground that Martin did not claim an error of law as required by Super. Ct. Civ. R. 59(e) and did not assert any of the grounds for post-judgment relief available under Super. Ct. Civ. R. 60(b). On September 2, 1998, the trial court denied Martin's motion "for the reasons stated by respondent [D.C. Courts] in its opposition brief." Martin's brief in this court does not identify any error in this ruling by the trial court. As a practical matter, given our disposition of Martin's appeal from the order of dismissal, the question of his entitlement to the post-judgment relief he requested is moot.

## II. Discussion

Martin's appeal presents a narrow question of law, which we review *de novo* [6]: whether the Superior Court has subject matter jurisdiction over a claim by a non-judicial court employee, who has exhausted his administrative remedies, that his termination violated procedural requirements contained in the D.C. Courts' Comprehensive Personnel Policies. This court implicitly assumed an affirmative answer to that question in *Romansky v. Polansky,* 466 A.2d 1253 (D.C.1983), when we upheld the rejection of a comparable claim on its merits without inquiring into the jurisdiction of the Superior Court to entertain it. But because the jurisdictional question was neither raised nor addressed in *Romansky,* that case does not settle the matter. "'[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.'" *Murphy v. McCloud,* 650 A.2d 202, 205 (D.C.1994) (quoting *Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)).[7]

The Superior Court is "a court of general jurisdiction with the power to adjudicate any civil action at law or in equity involving local law." *Powell v. Washington Land Co., Inc.,* 684 A.2d 769, 770 (D.C.1996) (quoting *Andrade v. Jackson,* 401 A.2d 990, 992 (D.C.1979)); *see also District of Columbia v. Group Ins. Admin.,* 633 A.2d 2, 13 (D.C.1993); D.C.Code § 11–921(a) (1995). The Superior Court's jurisdiction under this provision presumptively extends to claims, such as the one Martin presents, for equitable relief from allegedly unlawful actions by public officials. *See District of Columbia v. Sierra Club,* 670 A.2d 354, 357–59 (D.C.1996). In numerous past cases, moreover, we have recognized explicitly that the general equitable jurisdiction of the Superior Court extends to challenges by public employees of official decisions affecting their tenure. *See, e.g., Davis v. University of the District of Columbia,* 603 A.2d 849, 853 (D.C. 1992); *Kegley v. District of Columbia,* 440 A.2d 1013 (D.C.1982).[8] A "strong presumption" exists in favor of judicial reviewability which may be rebutted only by clear and convincing evidence of a contrary legislative intent. *Sierra Club,* 670 A.2d at 358 (quoting *People's Counsel v. Public Serv. Comm'n of the District of Columbia,* 474 A.2d 1274, 1278 n. 2 (D.C.1984) (concurring opinion), and citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Such a contrary legislative intent may be found where the legislature committed the challenged action entirely to official discretion, or where the legislature precluded judicial review, explicitly or implicitly, by statute. *See Sierra Club,* 670 A.2d at 358 (citing *Heckler v. Chaney,* 470 U.S. 821, 828, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)).

Thus, unless a contrary legislative intent clearly appears, the Superior Court had jurisdiction over Martin's claim that the D.C. Courts failed to accord him a procedural protection to which he legally was entitled under the CPP. Appellee argues that the District of Columbia Court Reorganization Act of 1970 ("Reorganization Act"), codified at D.C.Code § 11–101 *et seq.* (1995), manifests Congress's intent to leave the availability of judicial review of

---

**6.** *See Griffin v. United States,* 618 A.2d 114, 117 (D.C.1992).

**7.** For much the same reason, the jurisdictional question in this case was not settled by our decision in *Manuel v. District of Columbia,* 726 A.2d 687 (D.C.1999). In that case six Superior Court employees filed suit in Superior Court challenging the Executive Officer's revocation of their promotions. This court affirmed the trial court's dismissal of their

claim on the merits without considering the issue of jurisdiction.

**8.** In *Kegley,* a case arising out of an officer's appeal of a Metropolitan Police Department trial board decision to dismiss him, we held that the scope of review in Superior Court of such decisions is the same as this court's scope of review of a contested case under the District of Columbia Administrative Procedure Act, D.C.Code § 1–1501 *et seq.* (1999).

personnel actions up to the D.C. Courts, which exercised that authority to preclude judicial review in the implementing regulations promulgated in the CPP.

In the Reorganization Act Congress established the Joint Committee on Judicial Administration, a body consisting of the Chief Judges of the Superior Court and this court in addition to a total of three associate judges drawn from both courts. Congress empowered the Joint Committee to exercise broad supervisory responsibility over the administration of the District of Columbia court system. *See* D.C.Code § 11–1701(a). Congress further provided that the Chief Judges would supervise the internal administration of their respective courts, consistent with the general policies and directives of the Joint Committee. *See* D.C.Code § 11–1702. In creating the position of Executive Officer of the District of Columbia Courts, Congress made that official responsible for administering the court system subject to the supervision of the Joint Committee and the Chief Judges of the respective courts. *See* D.C.Code § 11–1703. These provisions, among others, manifest Congress's overall intent to vest "final authority" over the operations of the D.C. Courts in the Chief Judges and the Joint Committee.[9]

The Reorganization Act does not establish personnel policies for court employees.

Rather, in D.C.Code § 11–1701(b)(1), Congress authorized the Joint Committee to adopt "[g]eneral personnel policies, including those for recruitment, removal, compensation and training." Pursuant to this authorization, the Joint Committee promulgated the CPP to implement a comprehensive merit personnel system covering the courts' nonjudicial employees.

In D.C.Code § 11–1725(b), Congress empowered the Executive Officer of the D.C. Courts to appoint and remove nonjudicial employees such as Martin, subject, however, to "regulations" approved by the Joint Committee.[10] In 1996 CPP Nos. 1000–1012 constituted the "regulations" to which § 11–1725(b) refers and spelled out "the procedures to be followed when an adverse action is taken against a nonjudicial employee of the Courts." CPP No. 1000.[11] Hence Martin "must look to the [CPP] in order to ascertain what procedural rights, if any, he possessed with respect to his employment." *Romansky*, 466 A.2d at 1255.

The primacy of the CPP in determining the rights of nonjudicial court employees subject to discharge is confirmed by the final sentence of D.C.Code § 11–1725, which states that "[a]ppointments and removals of court personnel shall not be

---

9. The Reorganization Act created the "Joint Committee on Judicial Administration in the District of Columbia to act as a final authority over matters affecting the local court system as a whole.... It bears reiteration, however, that final authority over matters affecting, that is over operations within, a single court is vested without exception in the chief judge of that court." STATEMENT OF THE MANAGERS ON THE PART OF THE SENATE SUBMITTED REGARDING THE CONFERENCE ACTION UPON S. 2601, 91st Cong., 2d Sess. 10–11 (Comm. Print 1970).

10. As explained in *Romansky*, 466 A.2d at 1254–55, D.C.Code § 11–1725 divides nonjudicial court employees into two categories. Subsection (a) covers employees who perform duties for both the Superior Court and the Court of Appeals, and provides that the Executive Officer shall appoint and may remove such employees subject to the approval of the

Joint Committee. Subsection (b), applicable in Martin's case, covers other nonjudicial court personnel (with exceptions not material here), and states that the Executive Officer shall appoint "and may remove ... [such] other nonjudicial personnel for the courts ... as may be necessary, subject to—

(1) regulations approved by the Joint Committee; and

(2) the approval of the chief judge of the court to which the personnel are or will be assigned."

In *Romansky*, 466 A.2d at 1255, this court held that § 11–1725 authorizes, but does not require, the Joint Committee and the Chief Judges to review the Executive Officer's appointments and terminations.

11. In the current version of the CPP, these procedures are set forth in CPP Nos. 1000–1008.

subject to the laws, rules, and limitations applicable to District of Columbia employees." For present purposes it is particularly noteworthy that the Comprehensive Merit Personnel Act (CMPA), codified at D.C.Code § 1–601.1 *et seq.* (1999), which is the counterpart to the CPP in terms of establishing personnel policies for virtually all other employees of the District of Columbia government, designedly does not apply to employees of the D.C. Courts. *See also* D.C.Code § 1–602.1(a) (excluding court personnel from coverage by the CMPA).

As stated in former CPP No. 1009, the CPP grants nonjudicial court employees rights to challenge and appeal adverse actions such as terminations in order "to ensure fair treatment of employees and to provide procedural due process." When an adverse employment action is initiated, the affected court employee is afforded the opportunity to be heard before a decision is made. If the employee is then dissatisfied with the decision, she may submit a written appeal to the Executive Officer and request a formal evidentiary hearing before an impartial hearing officer. Following the hearing, the hearing officer must submit to the Executive Officer a written report of her findings and recommendations. The scope of the hearing officer's review is limited, and the hearing officer may recommend reversal or modification of a sanction only upon a finding that it was not justified legally or procedurally, or that management abused its discretion. The Executive Officer, or the appropriate Chief Judge if the Executive Officer is disqualified,[12] renders a final decision in writing after considering the record and the hearing officer's report.

The availability of further appeal of an adverse employment action is limited. When Martin was terminated, the CPP provided only that the Chief Judge of either the Superior Court or the D.C. Court of Appeals, or the Joint Committee, could, at their discretion, review any final adverse action approved by the Executive Officer. *See Romansky,* 466 A.2d at 1255.

Aside from discretionary review by a Chief Judge or the Joint Committee, neither the CPP nor the Reorganization Act provided (or currently provides) for judicial review of an adverse employment decision by the Executive Officer. This absence of an explicit grant to court employees of a right to judicial review is in marked contrast to the CMPA, which provides explicitly that other government employees may appeal to the Superior Court for a review of the record after the employees exhaust their administrative remedies. *See* D.C.Code § 1–606.3(d).

In short, Congress intentionally excluded nonjudicial court employees such as Martin from coverage by the CMPA, which permits judicial review of adverse employment decisions. Instead Congress authorized the Joint Committee to establish separate regulations governing the removal of nonjudicial court employees, without requiring those regulations to provide for judicial review. Further, Congress authorized the Executive Officer of the D.C. Courts to remove employees such as Martin subject only to the regulations established by the Joint Committee and purely discretionary oversight of the appropriate Chief Judge. The Joint Committee exercised its authority by enacting procedures for appeal and review of adverse decisions without providing expressly for judicial review.

■ Appellee argues that these facts suffice to constitute the requisite clear and convincing evidence, *see Sierra Club,* 670 A.2d at 358, of an implicit legislative intent to preclude judicial review—or, more precisely, to authorize the Joint Committee to preclude such review in the regulations it

---

**12.** As mentioned, under the CPP in effect prior to June 5, 1997, the Executive Officer was disqualified if he was a complaining witness or supervised the employee who was subject to the adverse employment action. *See supra* note 4; CPP No. 1012.

adopted—of removal decisions made in accordance with those regulations. *Cf. United States v. Fausto*, 484 U.S. 439, 448–49, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (absence of an explicit judicial review provision may, in light of the statutory scheme, constitute conclusive evidence of congressional intent to preclude judicial review). But that is as far as the permissible inference may go in this case, which is not far enough to foreclose judicial review of Martin's claim. For Martin asserts that the process by which he was removed was *not* in accordance with the regulations adopted by the Joint Committee—for the stated reason that the Executive Officer expressly was disqualified by the CPP from making the final decision to remove him.[13] We discern no congressional intent to foreclose judicial review of a claim that the D.C. Courts violated the procedures for removal which the Joint Committee promulgated at Congress's direction. Nor do we perceive any such intent on the part of the Joint Committee in promulgating those procedures.

■■■ It is telling that D.C.Code § 11–1725(b) refers to the procedures governing removal as "regulations"—a term connoting that those procedures have the force of law. *See Teachey v. Carver*, 736 A.2d 998, 1005 (D.C.1999). As this court has repeatedly said, an agency is bound to follow its own regulations, *see, e.g., Abdullah v. Roach*, 668 A.2d 801, 805 (D.C.1995), and we see no reason to exempt the D.C. Courts from the reach of this principle. Congress's intent to vest "final authority" over court operations in the Joint Committee and the Chief Judges does not relieve the D.C. Courts of the burden of compliance with the regulations promulgated by the Joint Committee and set forth in the CPP. That Congress authorized the Executive Officer to remove employees such as Martin *"subject to . . . regulations approved by the Joint Committee,"* D.C.Code

§ 11–1725(b)(1) (emphasis added), means that Congress expected full compliance with those regulations. Moreover, the procedures spelled out in the CPP for adverse actions plainly are intended to be binding. Thus CPP No. 1009 expressly stated that it is "the intent of the Personnel Policies to *ensure* fair treatment of employees and to provide *procedural due process* in the Adverse Action area." (Emphasis added).

Consistent with this intent, the language of former CPP Nos. 1000–1012 was mandatory throughout (as is the language of the revised CPP now in effect). For example, where a hearing is held on an employee's appeal, the hearing officer *"shall* conduct an independent, impartial hearing"; all testimony *"shall* be under oath or affirmation"; and the employee *"shall* have the right" to be present at the hearing, to present evidence and witnesses, and to cross-examine witnesses. CPP No. 1006 (emphasis added). Similarly, when the Executive Officer makes the final decision, he *"shall"* consider the record and the hearing officer's recommendation, *"shall"* render a written decision, and *"shall"* state his reasons if he rejects the hearing officer's recommendations. CPP No. 1011 (emphasis added). Where the Executive Officer is disqualified, the appropriate Chief Judge *"shall* be substituted as the individual who *shall* perform the acts of the Executive Officer *required* by this policy." CPP No. 1012 (emphasis added). Verbs such as "shall" ordinarily "create[ ] a duty, not an option." *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1257 (D.C.1990).

■■ That the CPP provisions constitute mandatory regulations issued under the authority of D.C.Code § 11–1701 implies that the procedural limitations in the CPP on the power of the D.C. Courts to take adverse actions are enforceable through judicial review if necessary, at least absent

---

**13.** Thus, this appeal does not present the question whether judicial review is available absent a claim of noncompliance with the

procedures mandated by the CPP, and we refrain from deciding that question.

the clearest expression of Congressional intent to the contrary. We see no indication that Congress intended to foreclose such judicial review when it empowered the Joint Committee to adopt the regulations.

The D.C. Courts do not dispute that Martin exhausted his administrative remedies, as set forth in the CPP, before he filed his petition in Superior Court. We therefore conclude that the trial court erred in dismissing Martin's claim that the Executive Officer was disqualified by the CPP from making the final decision to remove him.[14]

### III. Conclusion

For the reasons stated above, we remand to the Superior Court for reinstatement of Martin's petition and further proceedings thereon.

*So Ordered.*

---

14. We express no opinion on the merits of Martin's claim. Appellee argues that it is apparent from the record that the Executive Officer was not a complaining witness (nor was he Martin's supervisor), and therefore that he was not disqualified. But the D.C. Courts did not make this argument to the trial court as an alternative basis on which to dismiss Martin's petition, and Martin accordingly did not have occasion to respond to it. Points not raised in the trial court normally will not be heard on appeal. *See, e.g., President & Dirs. of Georgetown Col. v. Diavatis,* 470 A.2d 1248, 1251 (D.C.1983). No reason appears why we should deviate from that general rule in this case.