*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-567

MARGIE E. ROBERTSON, APPELLANT,

v.

DISTRICT OF COLUMBIA, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-005617-18)

(Hon. John M. Campbell, Trial Judge)

(Submitted September 24, 2020                    Decided February 17, 2022)

Margie E. Robertson, *pro se.*

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Carl J. Schifferle*, Acting Deputy Solicitor General at the time of submission, and *Jacqueline R. Bechara*, Assistant Attorney General at the time of submission, were on the brief for appellees.

Before GLICKMAN, THOMPSON[*], and DEAHL, *Associate Judges.*

---

[*] Judge Thompson was an Associate Judge of the court at the time of submission. Although her term expired on September 4, 2021, she will continue to serve as an Associate Judge until her successor is appointed and qualifies. *See* D.C. Code § 11-1502 (2012 Repl.). She was appointed on October 4, 2021, to perform judicial duties as a Senior Judge. *See* D.C. Code § 11-1504(b)(3) (2012 Repl.). She will begin her service as a Senior Judge on a date to be determined after her successor is appointed and qualifies.

(continued…)

THOMPSON, *Associate Judge*:  In July 2017, while she was a probationary employee of the District of Columbia Courts (the "D.C. Courts"), plaintiff/appellant Margie E. Robertson was terminated from her position as a supervisor in the Superior Court's Warrants and Special Proceedings Division. She responded by filing suit against defendants/appellees the District of Columbia, the D.C. Courts, and D.C. Courts' employees Daniel Cipullo, Yvonne Martinez-Vega, Belinda Carr, Alicia Shepard, Anne Wicks, James McGinley, and Tiffany Adams-Moore.  Her Amended Complaint alleged *inter alia* (1) that she was subject to discrimination, retaliation, and, ultimately, termination based on her race (African-American), gender, age (60+), and dark skin, all in violation of the District of Columbia Human Rights Act of 1977 (the "DCHRA")[1]; (2) that her termination violated Title VII of the Civil Rights Act of 1964 ("Title VII")[2]; (3) that the defendants defamed her and inflicted emotional distress through statements about her they made to potential employers and former coworkers; (4) that she was wrongfully terminated in violation of public policy; and (5) that defendants conspired to terminate her employment.  In this appeal, she contends that the

(…continued)

[1]  *See* D.C Code §§ 2-1401.01 to 2-1431.08 (2016 Repl. & 2021 Supp.).

[2]  *See* 42 U.S.C §§ 2000e to 2000e-l7.

Superior Court erred in granting defendants' motion to dismiss.[3]  For the reasons that follow, we affirm the judgment of the Superior Court, including its determination that the DCHRA affords appellant no remedy for the claims she has raised.

## I.

Appellant alleges that beginning in March 2017, defendant Carr, the Superior Court's Branch Chief of Special Proceedings, began to pressure appellant to intimidate and bully her own staff, and that when appellant refused, Carr began to bully her.  Appellant, who had been employed by the D.C. Courts for only seven months at the time, responded by filing an internal Equal Employment Opportunity ("EEO") complaint with defendant Adams-Moore, the D.C. Courts EEO Officer. Appellant amended her internal complaint on July 24, 2017, to add allegations against defendant Cipullo, then-Director of the Superior Court Criminal Division; defendant Martinez-Vega, Deputy Director of the Criminal Division, and defendant Shepard, Branch Chief.  Three days later, appellant received an email

---

[3]  The Amended Complaint also alleged a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (the "ADEA") and asserted a breach of contract claim, but appellant has not assigned as error the dismissal of those claims.

from defendant Cipullo transmitting a letter informing her that she was terminated. The termination notice stated that appellant had failed to demonstrate satisfactory performance during her probationary period. Thereafter, appellant filed complaints with the federal Equal Employment Opportunity Commission (the "EEOC") and with the District of Columbia Office of Human Rights ("OHR"). By letter dated October 12, 2017, she received from the EEOC a notice dismissing her complaint and notifying her of her right to file suit under the statutes enforced by the EEOC (including Title VII and the ADEA). OHR dismissed her complaint for lack of jurisdiction on March 20, 2018. Appellant filed her lawsuit on August 7, 2018.[4]

Ruling on defendants' motion to dismiss, the Superior Court determined that the Amended Complaint failed to state a claim upon which relief could be granted. As noted above, appellant challenges all aspects of the court's ruling except for its dismissal of her ADEA and breach of contract claims. Below, we address each portion of the Superior Court's rationale for dismissal. Our review of the Superior

---

[4] In her reply brief, appellant asserts that her Amended Complaint was primarily about retaliation, and she emphasizes the "temporal proximity" between her protected activity (i.e., her having expanded the scope of her internal EEO complaint) and her termination, as well as the absence of any "legitimate mentions of performance issues" prior to her filing (and thereafter amending) her internal complaint.

Court's ruling granting defendants' motion to dismiss is de novo. *Grimes v. District of Columbia*, 89 A.3d 107, 112 (D.C. 2014).

**II.**

**A.**

In dismissing appellant's DCHRA discrimination and retaliation claims, the Superior Court found that it is "established law" that the DCHRA is inapplicable to employees of the D.C. Courts. The court relied on *Mapp v. District of Columbia*, 993 F. Supp. 2d 26, 28 (D.D.C. 2014) (holding that the broad power the DCHRA gives District of Columbia executive agencies to remedy discrimination in all aspects of employment "fatally conflicts" with the 1970 District of Columbia Court Reorganization Act (the "Court Reorganization Act"[5]) and the 1973 District of Columbia Home Rule Act (the "Home Rule Act"[6])); *see also Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 366 (D.D.C. 2014) (agreeing that "[t]he D.C. City

---

[5] Pub. L. No. 91-358, Title I, 84 Stat. 473, codified at D.C. Code § 11-101 et seq. (2012 Repl.).

[6] Pub. L. 93-198, 87 Stat. 774, codified at D.C. Code § 1-201.01 et seq. (2016 Repl.).

Council may not regulate matters covered by the Reorganization Act, which expressly reserves management of personnel policies to the [D.C. Courts] Joint Committee [on Judicial Administration,]" quoting *Mapp*, 993 F. Supp. 2d at 28 (internal quotation marks omitted)).[7]

This court has not previously addressed whether the DCHRA applies to the D.C. Courts. Considering that issue for the first time in this case, we hold that it does not, i.e., that the DCHRA does not provide an employment-discrimination remedy for D.C. Courts employees.

As the courts did in *Mapp* and *Cornish*, we begin our analysis with the language of the Court Reorganization Act and the Home Rule Act. The Court Reorganization Act established the District of Columbia Court of Appeals and the Superior Court of the District of Columbia as components of "a wholly separate court system designed primarily to concern itself with local law and to serve as a

---

[7] Mapp was a former probation officer for the Superior Court who alleged multiple counts of employment discrimination in violation of the DCHRA. *Mapp*, 993 F. Supp. 2d at 27. Cornish asserted causes of action for hostile work environment and disparate treatment based on personal appearance in violation of the DCHRA, based on allegations about her treatment during her tenure as a program specialist in the Superior Court's Paternity and Child Support Branch. *Cornish*, 67 F. Supp. 3d at 348-49, 364.

local court system for a large metropolitan area." *Palmore v. United States*, 411 U.S. 389, 408 (1973). The Court Reorganization Act also established the Joint Committee on Judicial Administration (the "Joint Committee"), conferring on it "responsibility within the District of Columbia court system for . . . [g]eneral personnel policies, including those for recruitment, removal, compensation, and training" and for "other policies and practices of the District of Columbia court system." D.C. Code § 11-1701(b)(1), (9). The Reorganization Act further specified that "[a]ppointments and removals of court personnel shall not be subject to the laws, rules, and limitations applicable to District of Columbia employees." D.C. Code § 11-1725(b). As we have previously observed, "[t]hese provisions, among others, manifest Congress's overall intent to vest 'final authority' over the operations of the D.C. Courts in the Chief Judges and the Joint Committee." *Martin v. District of Columbia Courts*, 753 A.2d 987, 992 (D.C. 2000).

In enacting the Home Rule Act, Congress mandated that the District of Columbia court system "shall continue as provided under the . . . Court Reorganization Act," "subject to . . . [D.C. Code] § 1-206.02(a)(4)."[8] D.C. Code § 1-207.18(a). Section 1-206.02(a)(4) states that the Council of the District of Columbia (the "Council") "shall have no authority to . . . [e]nact any act,

---

[8] Section 1-206.02 is entitled "Limitations on the Council."

resolution, or rule with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)."

The *Mapp* court relied on the foregoing provisions to conclude that, under the "plain and unambiguous" statutory language, the Council "may not [including through the DCHRA] regulate matters covered by the Reorganization Act, which expressly reserves management of [D.C. Courts] personnel policies to the Joint Committee[.]" 993 F. Supp. 2d at 28. The court reasoned that a holding that the DCHRA applies to the D.C. Courts "would permit regulation of court personnel by the Office and Commission on Human Rights" through their broad power under D.C. Code § 2-1411.03 "to receive, review, investigate, and mediate employment discrimination claims" and "to remedy discrimination in all aspects of employment" in the District, and would "fatally conflict[]" with the Reorganization and Home Rule Acts. *Id.*[9]

---

[9] The *Mapp* court specifically rejected the argument that § 1-206.02(a)(4) merely "limits the prohibition on [C]ouncil action to regulations regarding organization and jurisdiction" of the D.C. Courts, *id.* at 29, reasoning that the argument "is defeated by the absence of any limiting language in the [Home Rule] statute," *id.* at 28. The court acknowledged that the prohibition in § 1-206.02(a)(4) refers in a parenthetical to Title 11 as "relating to organization and jurisdiction of the District of Columbia courts[,]" but cited the holding of other courts that "'relating to' parentheticals are 'descriptive and not limiting.'" *Id.* at 29. We express no view as to whether the *Mapp* court's analysis on this point is correct.

We have no difficulty agreeing with the *Mapp* court that because the DCHRA gives the Executive Branch "broad power [under the DCHRA] to remedy discrimination," *Mapp*, 993 F. Supp. 2d at 28, permitting D.C. Courts employees to seek remedies for alleged employment-related discrimination through administrative complaints filed with OHR would be inconsistent with the Joint Committee's plenary power with respect to court-system personnel policies and practices.[10]

---

[10] And indeed neither the DCHRA nor OHR's operating procedures make any provision for an administrative complaint process or remedy with respect to any personnel practices by the D.C. Courts. The statute provides for the Mayor to make "[t]he final administrative determination" in matters involving administrative complaints alleging violations of the DCHRA by "District of Columbia government agencies, officials and employees." D.C. Code § 2-1403.03(a). The Commission on Human Rights — which the OHR website describes as "an agency within [OHR] that adjudicates private sector discrimination complaints brought under the [DCHRA]" — may order private-sector respondents to take "affirmative action" to remedy unlawful discriminatory practices, "including but not limited to" hiring, reinstating, or upgrading an employee who has been the victim of discrimination. D.C. Code § 2-1403.03(a)(1)(A). By contrast, in dismissing appellant's administrative complaint, OHR explained that it "does not have jurisdiction to accept or investigate complaints of discrimination against [the D.C. Superior Court]". Its operating procedures state the same. See https://ohr.dc.gov/sites/default/files/dc/sites/ohr/publication/attachments/OHR%20Standard%20Operating%20Procedures_October2017_FINAL.pdf; https://perma.cc/E435-R3FW at 10 (last visited January 14, 2022).

This court has recognized the Council's "inten[t] to allow the courts of this jurisdiction to grant broader relief under the DCHRA than the OHR [i]s authorized to grant" in resolving administrative complaints. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 371 (D.C. 1993). Thus, the same issue presented by OHR's broad power to remediate DCHRA violations arises with respect to the broad remedial powers of courts in this jurisdiction, which likewise could be employed in a way that encroaches on the Joint Committee's responsibility to determine personnel policies and practices for the D.C. Courts. However, given the "strong presumption . . . in favor of judicial reviewability" and our recognition that "the general equitable jurisdiction of the Superior Court extends to challenges by public employees of official decisions affecting their tenure," *Martin*, 753 A.2d at 991 (internal quotation marks omitted), we cannot easily conclude that an employee of the D.C. Courts may not sue the D.C. Courts to seek redress for what the employee alleges are the D.C. Courts' violations of the DCHRA.[11]

---

[11] It also is not clear why a D.C. Courts employee's suit against the D.C. Courts alleging breach of contract, wrongful termination, or violation of a District of Columbia law enacted for the protection of employees — any of which presumably could implicate the Joint Committee's plenary authority over D.C. Courts' personnel policies and practices — should be allowed, while an employment-discrimination suit based on alleged violations of the DCHRA would be inconsistent with the Joint Committee's authority.

The *Mapp* court did not grapple with the issue of whether a judicial remedy would be inconsistent with the Court Reorganization Act's reservation of "regulation of court personnel for the Joint Committee," but concluded instead that "[a]ny legislation concerning [D.C. Courts] personnel policies exceeds th[e] boundaries [drawn by Congress]." 993 F. Supp. 2d at 29.[12]  In other words, it reasoned that the DCHRA simply "is inapplicable to employees of the D.C. Superior Court and the D.C. Court of Appeals." *Id.* at 28 ("The D.C. City Council may not regulate matters covered by the Reorganization Act, which expressly reserves management of personnel policies to the Joint Committee and explicitly exempts appointments and removals of court personnel from regulations generally applicable to District employees.").  As the language of the foregoing parenthetical shows, in reaching that conclusion, the *Mapp* court relied in part on the Court Reorganization Act language codified at D.C. Code § 11-1725(b) that exempts "[a]ppointments and removals of court personnel" from "laws, rules, and limitations applicable to District of Columbia employees." *See* 993 F. Supp. 2d at 28 (paraphrasing § 11-1725(b) and adding the modifier "generally" before "applicable").

---

[12]  *See also Cornish*, 67 F. Supp. 3d at 366; *Council of the District of Columbia v. Gray*, 42 F. Supp. 3d 134, 140 n.2 (D.D.C. 2014) (interpreting D.C Code § 1-206.02(a)(4) as prohibiting the Council from regulating the D.C. Courts), *vacated as moot*, 2015 U.S. App. LEXIS 8881 (D.C. Cir. 2015).

We can agree that the DCHRA *is* a law applicable (or generally applicable) to District of Columbia employees. But so, for example, is Title VII; yet, as the *Mapp* court acknowledged, Title VII is applicable to D.C. Courts employees. *Id.* at 29. This leads us to conclude that insofar as the *Mapp* court's reasoning that the DCHRA "is inapplicable to employees of the [D.C. Courts]" was premised on the exemption expressed in § 11-1725(b),[13] the *Mapp* court's reasoning is not persuasive.

However, for purposes of our analysis here, what *is* instructive about the Court Reorganization Act provision codified at § 11-1725(b) is that it mandates that D.C. Courts employees are not generally to be considered "District of Columbia employees" (even though the D.C. Courts is the District's "local court

---

[13] In *Martin*, we observed that a "noteworthy" result of the exemption expressed in § 11-1725(b) is that the Comprehensive Merit Personnel Act (the "CMPA"), which establishes personnel policies for most employees of the District of Columbia government, "designedly does not apply to employees of the D.C. Courts." 753 A.2d at 993. At least arguably, the (explicitly mandated and anticipated) CMPA or its predecessor merit personnel statute and the attendant regulations were the law and rules Congress had in mind in enacting the exemption expressed in § 11-1725(b). When Congress adopted the Court Reorganization Act, it certainly did not have in mind the later-enacted (and Council-enacted) DCHRA.

system"[14]).  What persuades us that D.C. Courts employees have no employment-discrimination remedy under the DCHRA is the Council's understanding, reflected in statements it made when enacting the 2002 amendments to the DCHRA, that in the area of employment, the universe of individuals to whom the DCHRA applies includes, on the one hand, "District of Columbia employees," and on the other hand, their "private sector counterparts" (and no one else).  *See* Committee of the Whole, Report on Bill 14-132, "Human Rights Amendment Act of 2002" (April 16, 2002), at 5.  The 2002 legislation amended the DCHRA to remedy the disparity that "though their private sector counterparts do not have to, District of Columbia employees must first exhaust all administrative remedies before proceeding to court."  *Id.*  The Council resolved this disparity "by allowing complaints by District employees alleging discrimination by the District to be filed either administratively or in Superior Court."[15]  *Id.*  The Council found that the DCHRA should afford "the right to elect one's remedy."  *Id.*  This legislative history

---

[14] *Palmore*, 411 U.S. at 408.

[15] The legislation, D.C. Law 14-189, § 2(h), added a new subsection (b) to D.C. Code § 2-1403.03.  *See* 49 D.C. Reg. 6523, 6524 (July 12, 2002).  Section 2-1403.03(b) reads: "A person claiming to be aggrieved by an unlawful discriminatory practice on the part of District government agencies, officials, or employees may elect to file an administrative complaint under the rules of procedure established by the Mayor under this section or a civil action in a court of competent jurisdiction under § 2-1403.16."

persuades us both that (1) the Council did not intend that the employment-discrimination provisions of the DCHRA would apply to D.C. Courts employees (who are neither District of Columbia employees nor private-sector employees), and (2) it would be inconsistent with the Council's intended "right to elect one's remedy" regulatory scheme to interpret the DCHRA as affording D.C. Courts employees a DCHRA-lawsuit remedy for alleged employment discrimination while, for the reasons discussed above, denying them access to an administrative remedy through OHR.[16] We therefore conclude that, as a matter of Council intent, the DCHRA simply does not afford any remedy to D.C. Courts employees (who, the Court Reorganization Act establishes, are not District of Columbia employees).

We hasten to add, however, echoing the *Mapp* and *Cornish* courts' observations, that any concern that the "District's courts would escape anti-discrimination regulation is diminished by the fact that local courts remain

---

[16] "While the action of a later Council usually does not provide definitive evidence of the intent underlying the action of a former Council," the rationale for an amendment may support an interpretation regarding the Council's original intent. *Coleman v. Cumis Ins. Soc.*, 558 A.2d 1169, 1172-173 (D.C. 1989) (citations omitted). To borrow language from the Supreme Court, if the Council did not intend to create a DCHRA remedy for D.C. Courts employees to obtain redress for employment discrimination, "a cause of action [for them under the DCHRA] does not exist and [this court] may not create one, no matter how desirable that might be as a policy matter, or how compatible with the [goals of] the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

subject to Title VII[.]"[17] *Mapp*, 993 F. Supp. 2d at 29; *Cornish*, 67 F. Supp. 3d at 366. We also note that for federal employees, Title VII "provides the exclusive remedy for claims of federal workplace discrimination on the basis of membership

---

[17] See 42 U.S.C. § 2000e-2(a)(1) (providing that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

Appellant alleged discrimination not only on the basis of race and sex but also on the basis that she is dark-skinned; her complaint refers to this as discrimination based on "personal appearance," which is a prohibited basis of discrimination under the DCHRA but not under Title VII. However, the DCHRA prohibition against discrimination on the basis of "personal appearance" is a prohibition against discrimination based on "the outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristics, manner or style of dress, and manner or style of personal grooming, including, but not limited to, hair style and beards." D.C. Code § 2-1401.02(22). Discrimination on the basis of dark skin would seem to constitute discrimination on the basis of color or race. *Cf. Howard v. District of Columbia Pub. Sch.*, 501 F. Supp. 2d 116, 121 n.15 (D.D.C. 2007) ("Title VII claims based on color have been interpreted by the courts as relating to the complexion of one's skin."). Color and race are prohibited bases of discrimination under both Title VII and the DCHRA. *See* 42 U.S.C. § 2000e-2(a)(1) and D.C. Code § 2-1402.11(a). In addition, retaliation for having opposed discrimination on any of the prohibited bases is an unlawful practice under both Title VII and the DCHRA. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title.") and D.C. Code § 2-1402.61(a) ("It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.").

in classes protected by Title VII."[18] Because D.C. Courts non-judicial employees "shall be treated as employees of the Federal Government" for some (limited but significant) purposes, D.C. Code § 11-1726(b)(1), it is neither untoward nor incongruous that D.C. Courts employees, like federal employees, are foreclosed from pursuing employment-discrimination claims through city or state anti-discrimination or human rights laws.[19] Finally, we note in addition that Policy No. 0400(I) of the D.C. Courts Comprehensive Personnel Policies ("CPP") adopted by the Joint Committee precisely tracks the DCHRA provision listing the prohibited bases of employment discrimination, thereby affording protection from invidious employment discrimination.[20]

---

[18] *Moore v. Carson*, 775 F. App'x 2, 2 (D.C. Cir. 2019); *see also, e.g.*, *Howard v. Pritzker*, 775 F.3d 430, 432 (D.C. Cir. 2015) ("In Title VII, Congress enacted 'an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.'" (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976))); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991) ("[T]he ADEA provides the exclusive remedy for a federal employee who claims age discrimination.").

[19] *See Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011) (explaining that federal employee's exclusive remedy for complaints of discrimination and associated retaliatory conduct was provided by Title VII and that claims under state anti-discrimination law were precluded); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (agreeing that federal employee could not sue under the Human Rights Laws of the State and City of New York because "Title VII provides the sole remedy for federal employees alleging employment discrimination").

[20] *Compare* CPP Policy No. 400(I) ("It is the policy of the District of Columbia Courts to provide equal employment opportunity for all persons; to

(continued…)

To sum up, we conclude that D.C. Courts employees have no remedy under the DCHRA for employment discrimination, and we therefore uphold the Superior Court's ruling dismissing appellant's DCHRA discrimination and retaliation claims.

---

(…continued)

prohibit discrimination in employment on account of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, political affiliation, status as a victim or family member of a victim of domestic violence, a sexual offense, or stalking, or credit information of any individual[.]") *with* the DCHRA section codified at D.C. Code § 2-1402.11(a) (prohibiting employment discrimination based on actual or perceived "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, political affiliation, status as a victim or family member of a victim of domestic violence, a sexual offense, or stalking, or credit information of any individual"). Thus, the *Cornish* court's observation that the D.C. Courts personnel policies "include[] similar language to the DCHRA about prohibiting discrimination," 67 F. Supp. 3d at 367, is something of an understatement.

Appellant's complaint did not assert a violation of the CPP, and this appeal does not raise the issue of whether a D.C. Courts employee may sue to recover damages (the relief appellant seeks) for an alleged violation of Policy No. 400(I). Accordingly, we express no opinion as to that question. *But see Martin*, 753 A.2d at 993-94 (holding that although no section of the CPP provides for judicial review, the procedures specified in the CPP are binding regulations and are enforceable through judicial review); *Cornish*, 67 F. Supp. 3d at 367 (concluding that nothing in sections of the CPP "grants an employee the right to sue the District or the D.C. Courts for monetary damages based on alleged employment discrimination").

**B.**

The Superior Court dismissed appellant's Title VII claim (as well as her ADEA claim) as time-barred because appellant failed to file suit within ninety days from the date when she received notice from the EEOC of her right to file. *See* 42 U.S.C. §§ 2000e-5(f)(1) and 2000e-16(c) and 29 U.S.C. § 626(e). Appellant's EEOC right-to-sue notice was dated October 12, 2017, but she did not file her complaint until August 7, 2018, which the Superior Court aptly observed was "well beyond the filing period." We therefore uphold the dismissal of these claims.

**C.**

The Superior Court found that the Amended Complaint failed to allege facts that could support a claim for defamation. The statements about which appellant complains were (1) alleged statements by defendants to appellant's former coworkers that appellant was not permitted to return to the workplace during business hours and (2) alleged statements to prospective employers that appellant was terminated for failure to perform.

To prove a claim of defamation, a plaintiff must show that (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) publication of the statement caused the plaintiff special harm or the statement was actionable as a matter of law irrespective of special harm. *See Carter v. Hahn*, 821 A.2d 890, 893 (D.C. 2003). In this jurisdiction, "one who in the regular course of business is asked by a prospective employer . . . for information concerning a person, is entitled to the defense of qualified privilege if his reply would otherwise be regarded as defamatory." *Smith v. District of Columbia*, 399 A.2d 213, 220 (D.C. 1979) (quoting *Collins v. Brown*, 268 F. Supp. 198, 200 (D.D.C., 1967)); *see also Edwards v. James Stewart & Co.*, 160 F.2d 935, 936 (D.C. Cir. 1947) (concluding that former employer's letter to a prospective employer, stating that the former employee's "services were not satisfactory," was a privileged communication). Where (as here) the existence of such a privilege is apparent from the face of the complaint, to state a claim and withstand a motion to dismiss, the complaint must "plead facts which, if true, would demonstrate that defendants had lost the privilege by making statements with actual malice." *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1033 (D. Minn. 2014) (citing *Elkharwily v. Mayo Holding Co.*,

955 F. Supp. 2d 988, 999-1000 (D. Minn. 2013)); *see also Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983) ("[T]he defense [of qualified privilege] is lost by the showing of malice."); *Hargrow v. Long*, 760 F. Supp. 1, 3 (D.D.C. 1989) (stating that privilege can be overcome if the plaintiff shows that the statements were "knowingly false [] or made in bad faith or reckless disregard of the truth").

The Superior Court dismissed appellant's defamation claims on the ground that the alleged statements were not false. The court reasoned that the first of the alleged statements accurately restated what appellant was told in the termination notice, i.e., that as a former employee, she was allowed to retrieve personal items from the court building and to return D.C. Courts property only outside of office hours. The court also found that the alleged statements implied nothing defamatory, but instead reflected "a standard and predictable aspect of workplace policy in an organization concerned about security." Regarding the alleged statements to prospective employers, the court noted that they accurately reflected the statement in the termination notice that appellant was terminated for "failure to demonstrate satisfactory performance." The record supports the Superior Court's analysis on these points.

Moreover, as numerous courts have held, "mere allegations of unsatisfactory job performance do not generally rise to the level of defamation per se." *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 635 (E.D. Va. 2009) (quoting *McBride v. City of Roanoke Redevelopment & Housing*, 871 F. Supp. 885, 892 (W.D. Va. 1994); *see also, e.g.*, *ITT Rayonier, Inc. v. McLaney*, 420 S.E.2d 610, 613 (Ga. App. 1992) (although supervisor asserted that the plaintiff's job performance was unsatisfactory, the expression of that opinion did not constitute an actionable defamation). Further, although appellant alleges that the statements to prospective employers were pretextual and made with knowledge that the stated rationale of "failure to demonstrate satisfactory performance" was untrue, her Amended Complaint does not identify who allegedly conveyed the information in question to the prospective employers, and does not allege that those particular individuals knew what appellant claims were the actual (retaliatory) reasons for her termination. Rather, the Amended Complaint refers vaguely to "Defendants' negative comments" and asserts that unspecified "Defendants have reportedly told prospective employers who called for a reference that Plaintiff was terminated for performance."[21] In short, the complaint does not "plead facts which, if true, would

---

[21] *Cf. Stencel v. Augat Wiring Sys.*, 173 F. Supp. 2d 669, 681 (E.D. Mich. 2001) (dismissing defamation claim against corporation and concluding that it was not pled with sufficient detail where the plaintiff failed to name as defendant(s) any individual person(s) who made the allegedly defamatory statement).

demonstrate that defendants . . . lost the privilege" by making statements with bad faith, malice, or reckless disregard of the truth. *Issaenko*, 57 F. Supp. 3d at 1033. For these reasons, too, we agree that appellant failed to plead facts sufficient for a plausible claim of defamation. *See Clampitt v. American Univ.*, 957 A.2d 23, 29 (D.C. 2008) (explaining that to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For the foregoing reasons, we uphold the dismissal of appellant's defamation claim.

**D.**

We likewise uphold the court's dismissal of appellant's intentional infliction of emotional distress ("IIED") claim. To state a claim for IIED, a plaintiff must prove (1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. *See Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007). To be "extreme and outrageous," conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997) (internal quotation marks omitted) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)).

The Superior Court found that appellant had alleged no facts that satisfy that demanding standard; it reasoned that it is customary for prospective employers to inquire about a prospective employee's work performance, and that a bare statement that appellant failed to demonstrate satisfactory performance was neither extreme nor outrageous. The court also found that appellant alleged nothing in the Amended Complaint to support a finding that she suffered severe emotional distress. We agree.[22]

**E.**

Appellant's wrongful termination claim was also properly dismissed. She was still a probationary employee at the time of her termination and thus was an at-will employee who could be discharged "at any time and for any reason, or for no

---

[22] *See also Ray v. Reich*, No. 93-5294, 1994 WL 148105, at *1 (D.C. Cir. Apr. 13, 1994) (per curiam) ("[A]s Title VII provides the exclusive remedy for federal employees asserting discrimination claims, [appellant's] claim[] for intentional infliction of emotional distress . . . w[as] properly dismissed.").

reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). There is, as the Superior Court recognized, a narrow exception to the at-will-employee doctrine that applies where an at-will employee is terminated for refusal to violate the law, or where the termination violates public policy. *See id*. at 32. Appellant did not allege that she was terminated for refusal to violate the law. As for her claim that her termination was discriminatory and retaliatory and thus against public policy, that claim was not cognizable. As we have explained, where there is "a specific, statutory cause of action to enforce" a public policy (such as a policy against workplace discrimination and against retaliation based on invocation of rights under the antidiscrimination statute), this court will "defer to the legislature's prerogatives and . . . decline to recognize a novel, competing cause of action for wrongful discharge at common law." *Carter v. District of Columbia*, 980 A.2d 1217, 1226 (D.C. 2009). Thus, the fact that appellant could have timely pursued her rights under the public policies that are embodied in Title VII[23] and the ADEA means that she may not pursue a claim for termination in violation of public policy based on the same factual allegations she asserted in support of her Title VII and ADEA claims. *See Nolting v. National Capital Group, Inc.*, 621 A.2d 1387, 1390 (D.C. 1993) ("[W]e do not think [the 'very narrow' public policy

---

[23] *See, e.g.*, 42 U.S.C. § 2000e-3(a) (prohibiting retaliation for complaining of Title VII violation).

exception] can be invoked where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation."); *see also, e.g.*, *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008) (upholding dismissal of wrongful-discharge claim because "the District's *own* common law extinguishes [such a claim] when the statute giving rise to the public policy at issue contains an alternative remedy"); *Jones v. District of Columbia Water & Sewer Auth.*, 943 F. Supp. 2d 90, 96 (D.D.C. 2013) ("To the extent that Jones asserts a cause of action that rests on a public policy already advanced by Title VII, the DCHRA, or the District's Whistleblower Protection Act, for example, [a public-policy exception] claim would fail."); *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 126 (D.D.C. 2012) (The public-policy exception must rest on "a statute or regulation that does not provide its own remedy."); *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 483 (D. Md. 2002) (rejecting public-policy exception where remedy already exists under Title VII).

## F.

Finally, the Superior Court dismissed appellant's conspiracy claim on the ground that the defendants constitute a single entity, such that, as a matter of law,

there could be no agreement among them establishing a conspiracy. *See, e.g., Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 109 (D.D.C. 2010) (explaining that when D.C. government officials act within the scope of their employment, they are considered members of a single entity); *McMillian v. District of Columbia*, 466 F. Supp. 2d 219, 223 (D.D.C. 2006) (noting that an action for civil conspiracy does not encompass acts performed by a single entity, and concluding that because the defendant District of Columbia government and its officials constitute a single entity, the plaintiff's allegations could not make out a case for civil conspiracy).

Appellant contends that her Amended Complaint sufficiently alleged that the individual defendants agreed on a course of conduct that was not part of their employment responsibilities. We need not resolve that issue because, in our jurisdiction, conspiracy is not an independent tort but depends upon the establishment of some other tortious conduct by the defendants. *See Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) ("[[C]ivil] conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort.") (internal quotation marks omitted) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)). Because appellant's other claims fail for the reasons explained above, her conspiracy claim likewise fails.

For all the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*